Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3139 | **DATE** | 7/6/2004 |
| **CASE TITLE** | Portis, et al vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ■ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ____ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ____ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The City of Chicago's Motion to Compel [89-1] is granted in part and denied in part. The court compels the production of plaintiffs' database, but orders defendants to split the expenses incurred to create the database. Further, defendants' Motion to Strike Plaintiffs' Surreply in Opposition to the City's Motion to Compel Production is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | JUL 0 7 2004 date docketed | 115 |
| ✓ | Notices mailed by judge's staff. | | docketing deputy initials | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | 7/1/2004 date mailed notice | |
| | Docketing to mail notices. | 2004 JUL -6 PM 4:38 | SB7 mailing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| SRB | courtroom deputy's initials | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 07 2004

| | | |
|---|---|---|
| **RONALD PORTIS, MADRIC LANCE, and EMMETT LYNCH, individually and on behalf of a class,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 02 C 3139** |
| **v.** | ) | |
| | ) | **Judge Robert W. Gettleman** |
| **CITY OF CHICAGO, et al.** | ) | |
| | ) | **Magistrate Judge Nan R. Nolan** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Ronald Portis, Mardric Lance and Emmett Lynch have brought this class action lawsuit against defendants City of Chicago, Terry Hillard, Joseph Griffin, John Risley, Francis Kehoe, Evert Johnson and Robert Johnson asserting claims under 42 U.S.C. § 1983 for violations of their federal civil rights. Specifically, plaintiffs were arrested for nonviolent ordinance violations which impose only a fine, not jail time. Plaintiffs allege they were "unlawfully detained for prolonged periods of time after completion of all administrative steps incident to their arrests for non-custodial ordinance violations," in violation of their civil rights. *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1284010, at *1 (N.D. Ill. June 10, 2004).[1] Before the court is defendant City of Chicago's motion to compel discovery.

The target of the City's motion to compel is a database that was compiled at the direction of plaintiffs' attorneys. The information in the database was gathered from computer databases

[1]The district court has certified a class defined as "all persons who, during the class period, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed." *Id.*

115

and hard copies of arrest reports produced by the City in response to plaintiffs' discovery requests. As described by plaintiffs, the database is a "compilation of selected data from [the City's] arrest reports that plaintiffs' counsel have judged to be relevant to proving their case or responding to anticipated defenses." (Pls.' Opp. at 5.) The fields of information collected in the database may include[2] (1) the name and address of arrestee, (b) the arrestee's central booking number, (c) date and time of arrest, (d) race and sex of the arrestee, (e) the ordinance that was the basis for the arrest, (f) district of arrest, (g) names of arresting officers, (h), booking date, (i) time received in lockup, (j) fax transmission time, (k) time the charges were approved, (l) bond date and time, and (m) the existence of an outstanding warrant. Some time ago, plaintiffs proposed that the parties undertake this time-consuming and expensive project together. Defendants declined to do so, but now the City asks the court to compel plaintiffs to turn over the fruits of their labor, which to date has cost plaintiffs in excess of $90,000 to compile. Plaintiffs oppose the motion to compel, asserting that the database constitutes attorney work product.

To resolve the City's motion to compel, the court must determine (i) whether the database constitutes opinion work product or fact work product, (iii) if the database is fact work product, whether the City has demonstrated a substantial need for the information and an inability to obtain equivalent information without undue hardship, and (iv) whether the City should be required to pay a share of the expenses incurred to compile the database. As explained further below, the court finds that although the database constitutes fact work product, the City

---

[2]These are the types of fields the City believes are in the database, based on communications with plaintiffs' counsel. Some of these fields may not be in the database, and there may be additional fields not mentioned here—plaintiffs have not disclosed the specific fields. For purposes of resolving this motion, however, such disclosure was not necessary.

has demonstrated a substantial need for the information. Further, the amount of time and money the City would have to expend to compile a similar database from scratch warrants a finding of undue hardship. The court therefore grants the City's motion to compel on the condition that the City contribute its fair share toward the expenses incurred in compiling the database.

**Discussion**

***Attorney Work Product Doctrine: Opinion v. Fact Work Product***

Attorney work product is material "prepared in anticipation of litigation or for trial" by or for a party or its representative, including but not limited to that party's attorney. Fed. R. Civ. P. 26(b)(3). The attorney work product doctrine is a qualified privilege that "exists because 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). The doctrine, now codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, draws a distinction between "opinion" work product—which reflects the "mental impressions, conclusions, opinions, or legal theories of an attorney"—and ordinary "fact" work product. *Id.* (quoting Fed. R. Civ. P. 26(b)(3)); *Caremark, Inc. v. Affiliated Computer Serv., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000). If the materials at issue constitute fact work product, the materials are discoverable, but only if the party seeking discovery demonstrates "a substantial need for the material and an inability to obtain the substantial equivalent of the information without undue hardship." *Eagle Compressors*, 206 F.R.D. at 478. Opinion work product, on the other hand, "is protected even when undue hardship exists" and thus, for all intents and purposes, receives absolute protection. *Id.*

Here, the database was compiled at the direction of plaintiffs' counsel in anticipation of litigation, and thus constitutes attorney work product. (Indeed, the City makes no argument to the contrary.) The question is whether the database is opinion or fact work product. The court finds *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) and *Washington Bancorporation v. Said*, 145 F.R.D. 274, 276 (D.C. 1992) instructive on this issue. In *Sporck*, the issue was whether an attorney's selection and compilation of documents for the client to review in preparation for his deposition constituted opinion work product. 759 F.2d at 316. The Third Circuit answered affirmatively, concluding that "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." *Id.* (citation and internal quotation marks omitted). *Washington Bancorporation* also involved an attorney's compilation of facts. There the issue was whether an attorney-created index cataloguing 2400 boxes of documents constituted fact or opinion work product. The court recognized that the index was a hybrid of fact and opinion work product because although the index was a compilation of factual information, the index "also arrange[d] that information in a way that could reveal the preparing attorney's opinions about the information indexed and how it relates to the underlying case." *Washington Bancorp.*, 145 F.R.D. at 276. To determine whether the index should receive the absolute protection accorded to opinion work product, or the qualified protection given to fact work product, the court then considered the extent to which producing the index to the other party would reveal attorney opinion. *Id.* The court concluded that unlike the attorney's compilation of documents in *Sporck*, which involved singling out a few documents out of thousands, the index compiling facts about 2400 documents was "not selective enough to qualify for 'opinion' status under *Sporck*." *Id.* at 277.

Like the index in *Washington Bancorporation*, the database here is a hybrid of fact and opinion work product. Although the database is a factual compilation, plaintiffs correctly argue that the categories of information in the database reveal what data plaintiffs' lawyers deemed relevant to select and code. It does not follow, however, that disclosing the database to defendants will reveal plaintiffs' counsel's mental impressions, opinions and legal strategy. The database is a compilation of arrest data from more than 20,000 arrest records, collecting, among other basic information, the arrestee's name, address, ordinance violated, booking number, bond time, etc. The vast number of documents catalogued "virtually eliminates the possibility" that defendants could discern plaintiffs' litigation strategy from the database. *Id.* at 278. Moreover, to the court's knowledge, the database does not include attorneys' evaluations of the data, or analysis of the strengths and weaknesses of the case in light of the data. Additionally, during the course of creating this database, plaintiffs' counsel revealed to defendants' counsel the types of information they intended to collect. Plaintiffs' counsel even suggested that the parties undertake the project as a joint collaboration. Until now, plaintiffs' counsel has never shown any concern that revealing the types of information they were compiling from the arrest records could reveal their legal strategies and mental impressions assessing how the facts relate to the issues in the case. Their concerns raised in opposition to the motion to compel thus ring hollow.

The court concludes that the database, like the index in *Washington Bancorporation*, is neither selective nor revealing enough to constitute opinion work product. Accordingly, the database is entitled to the protection given to ordinary fact work product, not the absolute protection given to opinion work product.

***Substantial Need and Undue Hardship***

Because the database is attorney work product, under Rule 26(b)(3) the court can compel plaintiffs to produce the database only if the City establishes that it has a substantial need for the database and that it is unable to obtain the substantial equivalent of the information compiled in the database without undue hardship. *Eagle Compressors*, 206 F.R.D. at 478. Despite plaintiffs' argument to the contrary, the court finds that the City has established both a substantial need and undue hardship.

Plaintiffs have brought a *Monell* claim against the City, the nature of which demonstrates that the City has a substantial need for the information in the database.[3] The basis for plaintiffs' *Monell* claim is that there is a "widespread and systemic practice in the City of Chicago of detaining individuals arrested on minor ordinance offenses for an extended period of time after all administrative steps have been completed." (City's' Mot. ¶ 10, quoting Pls.' Sec. Am. Compl. ¶ 58.) Plaintiffs' database, which shows the period of time each potential class member was detained, is highly relevant to that claim.

Plaintiffs counter that, at this point in the litigation, the database is nothing more than a research project -it is not the basis of expert testimony or a statistical analysis, and has not otherwise been used in the litigation. Until the database is put into play, plaintiffs argue, the court should not compel its production. In a different case, the court likely would agree with plaintiffs' position—but not in this case. For one thing, the court is hard pressed to believe that

[3]In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978), the Supreme Court held that municipalities face liability under 42 U.S.C. § 1983 if a plaintiff can show that a municipal employee violated the plaintiff's constitutional rights and the employee's unconstitutional action was an implementation of a municipal policy, custom or practice. Such policy-custom-and-practice claims are commonly referred to as *Monell* claims.

plaintiffs will not use the database—which was compiled at great expense—as part of proving their case, whether through a statistical analysis, expert testimony or otherwise. While the court would be justified in delaying production until it is clear that plaintiffs will use the database, the court disagrees with plaintiffs' contention that the court must delay production. Moreover, the information in the database is clearly relevant to whether the City has a constitutionally unlawful practice. In a case in which the number of potential class members exceeds 20,000, such a consolidated compilation of relevant data is an invaluable tool for both sides to assess the merits of the litigation.

Additionally, the City contends that it needs the database to ensure that the class notice is not overly inclusive. In other words, the City wants the database to double check plaintiffs' proposed class list. The City argues that defendants "need to ascertain and confirm the criteria and methodology plaintiffs used to determine who will get notice" and that without the database, they will be unable do so. (City's Reply at 5.) This argument overreaches—the City has all the information it needs to double check whether each proposed class member meets the proper criteria. Nevertheless, having plaintiffs' database will certainly make it easier for the City to confirm the proposed class list. Given the large number of potential class members, giving the City access to the database should expedite the class-notice process considerably.

Accordingly, it is the court's opinion that giving the City access to the database has tremendous potential to move this case forward. And again, given that plaintiffs originally wanted the City to collaborate with them in creating the database, the court finds that plaintiffs will not be unduly prejudiced by sharing it with the City now, provided they are fairly compensated for their extensive work. The court thus concludes that compelling production of

the database at this time has the potential to "materially advance the litigation without seriously prejudicing the [plaintiffs]." *Fauteck v. Montgomery Ward & Co., Inc.*, 91 F.R.D. 393, 398 (N.D. Ill. 1980) (compelling production of database that would eventually be discoverable, even if arguably not presently discoverable, on grounds that doing so would advance litigation without prejudice to defendants).

Further, there is no question that it would be an undue hardship for the City to recreate the database from scratch. The City has all the information it needs to create a similar database— plaintiffs created their database from computer data and documents provided by the City during discovery. But creating another database would require an extensive investment of time and money. Plaintiffs have spent more than $90,000 to compile their database, and it is not yet complete. Requiring defendants to duplicate that effort would be a complete waste of time and money. *Washington Bancorporation*, 145 F.R.D. at 279. The resources it would take for defendants to recreate the database easily satisfy the "undue hardship" element. *Id.*

Because the court finds that the City has a substantial need for access to the database and that the City could not obtain the substantial equivalent of the database without the undue hardship of expending extensive, duplicative resources, the court compels production of the database.

***The City Must Contribute its Fair Share of the Expenses Incurred in Producing the Database***

In order to avoid seriously prejudicing plaintiffs, however, the City must contribute its fair share of the expenses plaintiffs incurred to produce the database. *Fauteck*, 91 F.R.D. at 399 ("as to the element of unfairness that would result from a forced disclosure of a compilation made at great expense to defendant, this problem can be offset by requiring plaintiffs to share

defendant's costs"); *Williams v. E.I. duPont de Nemours & Co.*, 119 F.R.D. 648, 651 (W.D. Ky. 1987) (defendant ordered to pay "to the [plaintiff] a 'fair portion of the fees and expenses incurred' in the past by the [plaintiff] for the work of the [plaintiff's] expert in encoding the requested data and formulating the database"). The City's arguments against contribution do not persuade the court otherwise.

The City contends that contribution should not be required because the City incurred fees in excess of $10,000 to produce the information that plaintiffs used to create the database. (City's Mot. ¶13.) Considering the fact that plaintiffs have spent more than $90,000 to compile the database, it is ludicrous for the City to argue that "plaintiffs have received far more value from the work expended by and paid for by the City . . . than they themselves have incurred." (*Id.*)

Moreover, the City's production of discovery is categorically distinct from plaintiffs' production of attorney work product converting that discovery into something useful. These types of discovery are not treated the same. When a party expends significant resources creating attorney work product like the database at issue here, it would be unreasonable and prejudicial to require the party to disclose its work product to the opponent without requiring sharing of costs.[4] *See Fauteck*, 91 F.R.D. at 399; *Williams*, 119 F.R.D. at 651. With respect to the expenses the City incurred, on the other hand, the general rule is that "the responding party must bear the cost of complying with discovery requests[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). There are exceptions to this general rule, of course, *id.*, including an exception for cases

[4]There may be exceptions to cost sharing, such as where the party seeking discovery of attorney work product lacks resources, but that is not the case here.

in which the plaintiff seeks computer data that cannot be retrieved without special programming. *Anti-Monopoly Inc. v. Hasbro, Inc.*, No 94 Civ. 2120, 1996 WL 22976, at *2 (S.D.N.Y. Jan. 23, 1996). Part of the City's argument against contribution is that it incurred expenses for special programming, yet was not reimbursed. But this argument, addressed below, relates to *how much* the City should have to contribute, not *whether* the City should have to contribute.

In an argument first raised in its reply brief, the City further argues that "the financial obligation associated with creation of this database, which was necessary for plaintiffs' [sic] to ascertain the members of the class they purport to represent, was *plaintiffs' obligation* and not one to be foisted onto Defendants." (City's Reply at 7.) The court disagrees. The City is correct that, as a general rule, the representative plaintiffs should bear all costs relating to sending notice to the class, including the costs of identifying class members. *Oppenheimer*, 437 U.S. at 359. The flaw in the City's argument is that it was not necessary for plaintiffs to compile the database in order to identify the class and send notice. *Oppenheimer* teaches that class plaintiffs (absent special circumstances) bear the financial burden of identifying class members and sending notice. *Id. Oppenheimer* in no way suggests that plaintiffs are obligated to provide defendants with anything beyond a proposed class list—*i.e,* names and addresses –and the reason they were included in the list. Plaintiffs can provide a class list and the criteria for including them without ever disclosing their database. The City's contention that requiring defendants to pay any portion of plaintiffs' costs would violate *Oppenheimer*, quite simply, lacks merit. Plaintiffs had no obligation to create the database, and what is more, the database is a collection of information that goes well beyond identification of class members.

The only issue left to decide is the amount the City must contribute toward the plaintiffs'

expenses. As referenced earlier, the City contends that plaintiffs should have contributed toward the expenses the City incurred ($10,000+) in responding to plaintiffs' discovery requests because special computer programming was necessary to obtain the information requested. *See Anti-Monopoly Inc.*, 1996 WL 22976, at *2. The court notes that if the City felt that responding to the plaintiffs' discovery imposed "undue burden or expense," the City could have sought a protective order under Rule 26(c). The court also notes that, in plaintiffs' view, it is too late for the City to raise this issue, and further, that a significant portion of the expenses the City incurred are attributable to poor decisions and mistakes made by the City. Finally, it is worth noting that at one point, plaintiffs offered to credit the City for the expenses it incurred in responding to discovery if defendants would otherwise split the expenses associated with creating the database. Defendants would have been wise to accept that reasonable offer, but they chose not to. It is time to move this case along. The parties are each ordered to pay half of the total expenses plaintiffs have incurred to date to compile the database; the defendants' half shall be reduced by $5,000.00 as compensation toward special programming expenses defendants may have incurred.[5] As for any future expenses incurred to complete the database, those expenses shall be split evenly. Such future expenses shall include not only plaintiffs' expenses, but any special programming expenses incurred by defendants to provide the necessary data to plaintiffs.

***Defendants' Motion to Strike Plaintiffs' Surreply in Opposition to the City's Motion to Compel Production***

Defendants recently filed a motion to strike plaintiffs' surreply in opposition to the City's

---

[5]The court, in its discretion, finds that this amount constitutes a fair compromise. The City did not submit any documentation regarding what portion of its expenses incurred to respond to plaintiffs' discovery requests were attributable to special programming, but it is logical to conclude that not all of the City's expenses were due to special programming.

motion to compel, arguing that plaintiffs' surreply does not address newly discovered facts, new case law, or new arguments and merely constitutes an attempt to have the last word. This motion is denied. The court gave plaintiffs' leave to file the surreply at the last hearing. Further, the surreply addresses, at least in part, an argument raised for the first time in the City's reply brief-- namely, that plaintiffs must bear the cost of creating the database because the database was necessary for purposes of identifying the class members and sending class notice. Finding no basis to strike plaintiffs' surreply, the court denies defendants' motion; instead, the court has treated defendants' motion as a sur-surreply.

**Conclusion**

The City's motion to compel is granted in part and denied in part. The court compels the production of plaintiffs' database, but orders defendants to split the expenses incurred to create the database as delineated above. Further, defendants' motion to strike plaintiffs' surreply in opposition to the City's motion to compel production is denied.

ENTERED:

Nan R. Nolan

NAN R. NOLAN

United States Magistrate Judge

Dated: July 6, 2004