# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3139 | **DATE** | 12/6/2004 |
| **CASE TITLE** | Ronald Portis vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ☒ [Other docket entry]
Plaintiffs' Motion to (a) Quash Defendants' (1) Notices to Depose Plaintiffs' Computer Consultant and Paralegals, and (2) Requests for their Invoices and Salary Information; and (b) Advise the Parties How it Intended Plaintiffs' Costs for the Creation of Plaintiffs' Database to be Calculated [164-1] is granted. The expenses incurred to create the database shall be calculated based on the number of hours Mr. Soule and the paralegals spent on the project, multiplied by their respective hourly billing rates ($150/$190 for Mr. Soule, $105 for the paralegals). Further, because there is no need for discovery regarding the salaries paid to Mr. Soule and the paralegals, the document requests and deposition notices relating to their salaries are quashed.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | 7 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | | |
| | No notices required. | | | DEC 7 2004 | | |
| ✓ | Notices mailed by judge's staff. | | | date docketed | | |
| | Notified counsel by telephone. | | | | | |
| | Docketing to mail notices. | | | docketing deputy initials | | 179 |
| | Mail AO 450 form. | | | 12/6/2004 | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| | | courtroom deputy's initials | | | | |
| hmb | | | | jmb | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD PORTIS, MADRIC LANCE, and )
EMMETT LYNCH, individually and on behalf )
of a class, )
)
    Plaintiffs, )
) No. 02 C 3139
v. )
) Judge Robert W. Gettleman
CITY OF CHICAGO, et al. )
) Magistrate Judge Nan R. Nolan
    Defendants. )

DOCKETED
DEC - 7 2004

## MEMORANDUM OPINION & ORDER

Plaintiffs Ronald Portis, Mardric Lance and Emmett Lynch have brought this class action

lawsuit against defendants City of Chicago, Terry Hillard, Joseph Griffin, John Risley, Francis

Kehoe, Evert Johnson and Robert Johnson asserting claims under 42 U.S.C. § 1983 for violations

of their federal civil rights. Plaintiffs, who were arrested for nonviolent ordinance violations

which impose only a fine, allege they were "unlawfully detained for prolonged periods of time

after completion of all administrative steps incident to their arrests for non-custodial ordinance

violations," in violation of their civil rights. *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL

1284010, at *1 (N.D. Ill. June 10, 2004).[1] This matter is before the court for ruling on *Plaintiffs'*

*Motion to (a) Quash Defendants' (1) Notices to Depose Plaintiffs' Computer Consultant and*

*Paralegals, and (2) Requests for their Invoices and Salary Information; and (b) Advise the*

*Parties How it Intended Plaintiffs' Costs for the Creation of Plaintiffs' Database to be*

---

[1]The district court has certified a class defined as "all persons who, during the class
period, were arrested on ordinance violations which carry no jail time in the City of Chicago and
who were detained for more than two hours after all administrative steps incident to the arrest,
except non-discretionary ministerial acts, were completed." *Id.*

179

*Calculated* ("plaintiffs' motion"). To understand plaintiffs' motion, some background information is necessary.

**Background**

Plaintiffs' motion is related to a ruling issued by this court on July 6, 2004 regarding defendant City of Chicago's motion to compel discovery. In its motion to compel, the City sought production of a database that was compiled at the direction of plaintiffs' attorneys. Plaintiffs' database is a compilation of factual information selected from "computer databases and hard copies of arrest reports produced by the City in response to plaintiffs' discovery requests." *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1535854, at *1 (N.D. Ill. July 7, 2004).[2] The City produced records regarding 15,000 to 20,000 arrestees. Early in the litigation, plaintiffs' counsel suggested that the parties work together on the time-consuming and expensive project and produce a joint database, but defendants declined to do so. *Id.* The City subsequently filed a motion to compel production of the database. As explained more fully in the court's order of July 6, 2004, over plaintiffs' objections, the court found that although the database was entitled to fact work product protection, the City had demonstrated "a substantial need for access to the database and that the City could not obtain the substantial equivalent of the database without the undue hardship of expending extensive, duplicative resources." *Id.* at *5. The court therefore granted the motion to compel in part, finding that: (i) "such a consolidated compilation of relevant data is an invaluable tool for both sides to assess the merits of the litigation[;]" (ii) "giving the City access to the database should expedite the class-notice process

---

[2]The opinion was issued on July 6, 2004; Westlaw's date of July 7, 2004 reflects the date the opinion was docketed.

considerably[;]" (iii) "plaintiffs will not be unduly prejudiced by sharing [the database] with the City now, provided they are fairly compensated for their extensive work[;]" and (iv) even though the City had all the information necessary to create a similar database, requiring the City to duplicate plaintiffs' effort "would be a complete waste of time and money." *Id.* at *4. In order to avoid seriously prejudicing plaintiffs, who had expended considerable resources to create the database, the court further ordered the City to pay its fair share of the expenses incurred to create the database. Specifically, the order of July 6, 2004 stated:

> The parties are each ordered to pay half of the total expenses plaintiffs have incurred to date to compile the database; the defendants' half shall be reduced by $5,000.00 as compensation toward special programming expenses defendants may have incurred. As for any future expenses incurred to complete the database, those expenses shall be split evenly. Such future expenses shall include not only plaintiffs' expenses, but any special programming expenses incurred by defendants to provide the necessary data to plaintiffs.

*Id.* at *6 (footnote omitted). Neither side appealed the court's order compelling production of the database and ordering the City to split the expense of the database. Now, more than four months after the opinion was issued, it has come to the court's attention that the parties disagree about what the court meant by "expenses" in the July 6th order.

Plaintiffs' counsel have calculated their expenses based on the number of hours their computer consultant, Mr. Soule, and their paralegals spent creating the database, multiplied by the consultant's and the paralegals' respective billing rates.[3] Defense counsel objects to that

---

[3]Evidently after the order was issued, plaintiffs' counsel provided the City with a summary of the time plaintiffs' computer consultant and paralegals had spent on the project, together with a statement of their hourly billing rates. According to plaintiffs' counsel, the City did not challenge plaintiffs' method of calculating the expenses. Rather, defense counsel informed plaintiffs that if it had to pay for the database, the City no longer wanted it. Defense counsel does not deny making that representation. When the City renewed its interest in the database some time later, the City raised for the first time its position that expenses should not be

3

formula, contending that the order of July 6, 2004 "clearly contemplates out of pocket expenses,"

not the equivalent of costs that might be assessed after a case ended. (Def.'s Resp. ¶ 8.) In other

words, the City believes its fair share should be based on the hourly rate plaintiffs' counsel *paid*

Mr. Soule and the paralegals (*i.e.*, a proportion of their respective salaries), not on their billing

rates.[4] Thus, on October 12, 2004, the City served plaintiffs with document requests seeking

invoices, pay stubs, payroll records, time records, etc. relating to (i) the hours worked by Mr.

Soule and the paralegals, and (ii) their respective salaries. In a letter dated October 15, 2004,

defense counsel further informed plaintiffs' counsel that they intended to take depositions

regarding the expenses incurred to compile the database. On November 12, 2004, plaintiffs filed

the pending motion, asking the court to quash those discovery requests and advise the parties

what it meant by "expenses."

## Discussion

### A.     The Meaning of "Expenses" in the Order of July 6, 2004

When the court issued the July 6, 2004 order requiring the City to pay its fair share of the

expenses plaintiffs incurred to compile the database, the court meant for the bill to be calculated

based on the number of hours Mr. Soule and the paralegals spent on the project, multiplied by

_____

calculated based on the hours spent multiplied by the hourly billing rate. According to the City,
plaintiffs' counsel failed to provide adequate substantiation for the expenses incurred in creating
the database. On October 26, 2004, plaintiffs' counsel provided redacted billing records relating
to the consultant's and paralegals' work on the database. According to plaintiffs' counsel, the
billing records were not produced earlier because it was their understanding that the City did not
want the database if it had to pay.

[4]The City further argues that it should not be required to pay for the database at all. That
argument is addressed below.

their hourly billing rates, plus other costs, if any.[5]  In deciding to order the parties to split the

expenses—*i.e.*, the costs—incurred to compile the database, the court found *Fauteck v.*

*Montgomery Ward & Co., Inc.*, 91 F.R.D. 393, 399 (N.D. Ill. 1980) and *Williams v. E.I. duPont*

*de Nemours & Co.*, 119 F.R.D. 648, 651 (W.D. Ky. 1987) instructive. *Portis*, 2004 WL

1535854, at * 5. Both *Fauteck* and *Williams* involved compilations of facts in computer

databases that were prepared for trial. *Fauteck*, 91 F.R.D. at 398 (employment discrimination

case in which defendant created a database compiling facts selected from its personnel records);

*Williams*, 119 F.R.D. at 650 (employment discrimination case in which EEOC created a database

of facts gleaned from defendant's employment records). As in the case at bar, in both *Fauteck*

and *Williams*, the party seeking its opponent's database had access to all of the underlying

records that were used to create the database, so the party had the ability to create its own

database. *Fauteck*, 91 F.R.D. at 398; *Williams*, 119 F.R.D. at 649-50. Like this court, the

*Fauteck* and *Williams* courts compelled production of the databases because creating a similar

database from scratch would have been a "time-consuming, duplicative and expensive effort."

*Williams*, 119 F.R.D. at 650; *Fauteck*, 91 F.R.D. at 398. Regarding cost-sharing, in *Fauteck*, the

court compelled production of the database "contingent on plaintiffs' willingness to reimburse

---

[5]According to the City, plaintiffs' counsel misled both the court and the City during briefing on the motion to compel by failing to disclose "that when they claimed they were reporting 'expenses' in their Opposition brief," they were really seeking "costs" that they might recover in an attorneys' fee petition if plaintiffs prevail on the merits. (Def.'s Resp. ¶ 6a.) To be clear, the court was not misled. During the briefing on the motions to compel, neither party used the term "expenses"—both parties argued about "costs" and whether the City should have to contribute. Further, when plaintiffs represented that they had spent "$72,200.00 in paralegal time for data entry[,]" (Pls.' Mem. Opp. Mot. Compel at 3), the court presumed that number was based on an hours-times-billing-rate calculation.

5

defendant for 50% of compilation costs." *Fauteck*, 91 F.R.D. at 399. Likewise, in *Williams*, the court ordered the defendant to pay its "'fair portion of the fees and expenses incurred' in the past by the [EEOC] for the work of the [EEOC's] expert in encoding the requested data and formulating the database." *Williams*, 119 F.R.D. at 651. Neither the *Williams* court nor the *Fauteck* court found it necessary to explain what "costs" or "fees and expenses" meant. In this case, however, the parties have requested further explanation.

Here, to avoid prejudicing plaintiffs, plaintiffs' expenses must include the value of Mr. Soule's and the paralegals' time, calculated based on the number of hours they worked on the database, multiplied by their respective billing rates. Regarding Mr. Soule, this is a non-issue. He works as a consultant for plaintiffs' counsel at a given hourly rate. Prior to July 2004, Mr. Soule charged plaintiffs' counsel $150/hour; since July 2004, he charges plaintiffs' counsel $190/hour. Plaintiffs' counsel pays Mr. Soule for every hour he works at the designated billing rate.[6] Unlike the paralegals, he is not an employee who is paid one rate and billed at another. Thus, under either parties' interpretation of the July 6th order, the cost of Mr. Soule's time spent working on the database is unquestionably an expense incurred to compile the database.

As for the paralegals, a fair resolution requires calculation of paralegal expenses based on

---

[6]Although plaintiffs' counsel explained this practice to the City, the City challenges that "there has been no substantiation that plaintiffs' counsel ever actually paid Mr. Soule at the rate of $150–$190 per hour, nor is there any substantiation or documentation that Mr. Soule should command such an amount for what he did in this case, which has not been properly disclosed nor yet discovered." (Def.'s Resp. ¶ 7.) Regarding whether plaintiffs' counsel pays Mr. Soule, plaintiffs' counsel submitted an affidavit that they pay Mr. Soule for every hour he bills them at the rate he bills them; this representation satisfies the court. Additionally, the City's argument that plaintiffs have failed to disclose the work Mr. Soule did on the database is belied by the redacted time records plaintiffs sent to the City on October 26, 2004, which provide the dates on which Mr. Soule worked, the amount of time he worked, and a description of his work.

a reasonable hourly billing rate. In the context of petitions for attorneys' fees and costs after a party succeeds on the merits, paralegal services are compensated at the market rate—*i.e.*, an hourly billing rate. *See In re Continental Ill. Sec. Litig.* 962 F.2d 566, 569 (7th Cir. 1992) (error not to compensate paralegal expenses based on market value of paralegal services).[7] The City argues that cases involving fee petitions are not instructive here because no party has succeeded on the merits. The court disagrees.

Requiring the City to pay for half of the paralegal services based on an hourly billing rate effectively puts the parties in the position as if each side had contributed to the development of the database from its inception. Had the City agreed to undertake a collaborative effort to create the database, it is reasonable to assume that the parties would have contributed equal resources toward the project. For example, if four paralegals were needed, counsel for each side could have assigned two paralegals to the project (or worked out some other equitable arrangement). Instead, plaintiffs provided all of the paralegal services. The paralegals' billing rate is $125 per

---

[7]The City contends that in *In re Continental Illinois Securities Litigation*, the Seventh Circuit made a "distinction between the 'expenses' ordered by this Court and the 'fees' claimed by plaintiffs, a distinction that plaintiffs refuse to recognize." (Def.'s Surreply ¶ 5.) This contention is not based on a fair reading of the Seventh Circuit's opinion. The Seventh Circuit did not discuss paralegal "fees." Nor did the court make the distinction between expenses and costs that the City urges. Rather, the court held that paralegal services should be compensated at market rates, not the "hourly *expense* of each paralegal, consisting of the paralegal's salary divided by 40 plus overhead directly attributable to that paralegal . . . ." *In re Continental Ill. Sec. Litig.*, 962 F.2d at 569 (emphasis in original). The court went on to state: "The Supreme Court has disapproved the approach of basing reimbursement for paralegal *expenses* on the 'cost' of the paralegal, as distinct from the market value of his services, when it is customary to bill separately for the value of those services." *Id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 287-89 (1989) (emphasis added)). And later in the opinion, the Seventh Circuit reiterated that paralegal *expenses* are reimbursed at market rates. *Id.* at 570.

hour.[8] When plaintiffs' paralegals were working on the database, they were unavailable to do

other billable work, whereas defense counsel's paralegals were free to do other work, billing their

an hourly rate. Whether defense counsel's paralegals were free to do other work for the City or

for other clients makes no difference. If defense counsel had to create their own database, the

City would have to pay for 100% of the paralegal time based on defense counsel's hourly billing

rate for paralegals. Compensating plaintiffs for 50% of the paralegal time, based on the hourly

billing rate, simply levels the playing field.

For these reasons, when the court ordered the City to share the expenses incurred to create

the database, the court expected the expense of the services provided by Mr. Soule and the

paralegals to be calculated based on hourly billing rates.[9]

---

[8]As explained in section B of this opinion, the court is reducing this rate for purposes of calculating the expenses incurred to create the database.

[9]Even if the court were to reconsider what it meant by "expenses" in the July 6, 2004 order (which it was not asked to do), the City's position is unpersuasive. In support of its argument that paralegal services should be reimbursed based on plaintiffs' "actual outlays" (*i.e.*, a proportionate share of the paralegals' salaries), the City relies on *Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363, 364-67 (7th Cir. 2000). In *Hotline Industries*, the issue was whether 28 U.S.C. § 1447(c), the fee shifting provision applicable to improper removal proceedings, "permits salaried government employees to recover at prevailing market rates." *Id.* at 364. The Seventh Circuit ruled that because the statute expressly limits recovery to "payment of just costs and any actual expenses, including attorney fees," the district erred by awarding attorney's fees based on prevailing market rates rather than the attorney's fees that were actually incurred by the government in defending the removal action (*i.e.*, a proportional share of the government attorneys' salaries plus related overhead). *Id.* at 366-68. Given the unique facts presented in *Hotline Industries*, the City's reliance on the case is misplaced. *Hotline Industries* involved an unusual statute: one of the "few fee-shifting statutes [that] explicitly limit recoveries to actual outlays." *Id.* at 367. Additionally, the case involved government attorneys who do not bill at an hourly rate in the course of performing their jobs. Significantly, unlike salaried government attorneys, private attorneys may recover attorney's fees based on their reasonable hourly rates under § 1447 (c). *Vyshnevsky v. Park Ridge Oldsmobile*, No. 02 C 6173, 2003 WL 21518568, at *2 (N.D. Ill. July 2, 2003).

## B.     Challenges Regarding the Work Performed on the Database

In addition to challenging the method for calculating paralegal services, the City also questions whether the work was actually done by paralegals. Plaintiffs' counsel has clarified through an affidavit that the work was done by 3 full-time paralegals, 2 part-time paralegals, and 3 law students who performed paralegal work during the spring and summer of 2004. Counsel's representation satisfies the court on this issue.

The City further argues that the paralegals did not perform paralegal work. According to the City, "[i]t is data entry work, for which plaintiffs' counsel could go out into the market place and presumably hire someone for under $20 per hour to perform the work on a temporary basis." (Def.'s Resp. ¶ 11.) Plaintiffs counter that it was necessary to use careful, skilled workers for the work, in part because the City produced boxes of arrest records in no particular order, which complicated the task of creating the database. The City that had the opportunity to be involved in creating the database from its inception, but declined to do so. Had the City chosen to work with plaintiffs to create the database, the City could have had input regarding how to create the database most efficiently and cost-effectively. It was the City's prerogative to decline plaintiffs' offer. But one ramification of that decision is that the City's complaints about what could have been done differently are not well-taken.

The City has raised no specific challenges to the number of hours that Mr. Soule or the paralegals spent to create the database, and declined the court's offer to review the billing records *in camera* for reasonableness. Regarding the paralegals' billing rate of $125 per hour, at the hearing on November 22, 2004, defense counsel represented that it charges the City less for paralegal time, but did not reveal its rate. A specific rate suggestion from the City would have

9

been helpful. Nevertheless, the court's research shows that the district court recently approved a

rate of $105.00 per hour for paralegal services. *Zaghloul v. DaimlerChrysler Services, LLC*, 03

C 4499, 2004 WL 2203427, at *2 n.2 (N.D. Ill. Sept. 29, 2004) (Gettleman, J.). Following

*Zaghloul*, the court orders paralegal expenses to be calculated at a rate of $105 per hour.

## C.     The Discovery Served by the City is Unnecessary

The purpose of the document requests and deposition notices the City served is to

ascertain how much plaintiffs' counsel paid Mr. Soule and their paralegals. This discovery is

unnecessary. Paralegal services shall be reimbursed at a rate of $105 per hour, and Mr. Soule's

services shall be reimbursed at his applicable hourly rate. Plaintiffs' counsel has provided

redacted billing records that explain the dates each person worked, the amount of time worked,

and the work performed. No further information is necessary. Accordingly, the document

requests relating to the amounts paid to Mr. Soule and the paralegals are quashed. Likewise, the

City is barred from deposing the paralegals and Mr. Soule on this issue.

## D.     The City Argues Against Cost-Shifting in Any Form

The City also argues that there is no basis for cost-shifting, regardless of the method of

calculation, because plaintiffs intend to use the information in the database as substantive

evidence. In the City's view, such cost-shifting—which is tantamount to requiring the City to

pay plaintiffs to create evidence against it—is unprecedented. The court disagrees.

As an initial matter, the City's argument is untimely. Regardless whether there was room

for disagreement regarding how the court intended the expenses to be calculated, the order of

July 6, 2004 clearly stated that the court was requiring the City to pay for the database. If the

City wanted to challenge that ruling, it should have appealed the court's order of July 6, 2004

within ten days as required by Rule 72(a) of the Federal Rules of Civil Procedure.

As for the court's decision to shift costs, under Rule 26(c) of the Federal Rules of Civil Procedure, a court has authority to "make any order which justice requires to protect a party or person from . . . undue burden or expense . . . ." Fed. R. Civ. P. 26(c). As the Seventh Circuit has explained, Rule 26(c) gives "trial courts considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996); Fed. R. Civ. P. 34, Advisory Committee Notes, 1970 amendment ("[T]he courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs."). And despite the City's belief to the contrary, courts have required parties to share the costs of creating computer databases that will be part of their opponent's evidence against them.[10] For example, in *Fauteck*, the court required the plaintiffs to share the costs of a database that was expected to serve as the foundation for the defendant's expert trial testimony. *Fauteck*, 91 F.R.D. at 398.

Similarly, in *Williams*, the plaintiff's expert compiled facts from the defendant's records

---

[10]Despite the general presumption that the responding party bears the costs of responding to discovery requests, *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340 358 (1978), cost-shifting is not that unusual, particularly in cases involving discovery of electronic evidence. For example, when a party seeks discovery of electronic data that is not readily accessible, courts often require the parties to share the costs of production. *See, e.g., Wiginton v. CB Richard Ellis, Inc.*, No. 02 C 6832, 2004 WL 1895122, at *8 (N.D. Ill. Aug. 10, 2004); *Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *12 (N.D. Ill. June 3, 2002); *see generally, Zubulake v. UBS Warburg LLC*, No. 02 Civ. 1243, 2003 WL 21087884, at *5-13 (S.D.N.Y. May 13, 2003). Courts utilize cost-shifting in other contexts as well. If a party establishes a need for discovery from its opponent's non-testifying expert, the party must pay its opponent "a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert." Fed. R. Civ. P. 26(b)(4)(C).

into a computer database, which the expert used as a tool to analyze the facts. 119 F.R.D. at 649. The expert's final report included his statistical analysis, opinion, and aggregate factual data. The plaintiff resisted turning over the underlying database, however, because it had expended considerable resources to create the database and all of the raw data that went into the database came from defendant's own records. *Id.* at 649-50. The defendant argued that it required access to the database in order to effectively cross-examine the expert, examine the accuracy of the database, and properly assess the aggregate factual data. *Id.* at 650. The court agreed that it would be wasteful and duplicative to require defendant to create its own database. Accordingly, the court compelled production of the database, but required the defendant to pay a fair portion of the fees and expenses incurred to create the database. *Id.* at 651.

The *Williams* case is factually analogous to the case at bar, regardless whether plaintiffs intend to introduce their facts through an expert or a lay witness. At trial, plaintiffs will introduce their aggregate factual data regarding the length of the arrestee's detentions. As in *Williams*, plaintiffs will have to provide that aggregate factual data to the City during discovery when it is in final, or close to final, form. But if the City wants the database in order to check the accuracy of plaintiffs' facts without going through the underlying records (*i.e.*, the City's own records), then pursuant to the court's authority under Rule 26(c), the City must pay its fair portion of the expenses incurred to create the database.

## Conclusion

Plaintiffs' motion is granted. As explained in more detail above, the expenses incurred to create the database shall be calculated based on the number of hours Mr. Soule and the paralegals spent on the project, multiplied by their respective hourly billing rates ($150/$190 for Mr. Soule,

$105 for the paralegals), plus other costs, if any. Further, because there is no need for discovery

regarding the salaries paid to Mr. Soule and the paralegals, the document requests and deposition

notices relating to their salaries are quashed.

ENTERED:

_Nan R Nolan_

NAN R. NOLAN
Dated: December 6, 2004                United States Magistrate Judge

13