IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD PORTIS, MADRIC LANCE, and EMMETT LYNCH, individually and on behalf of a class, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, et al. <br><br> Defendants. | No. 02 C 3139 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION & ORDER

Plaintiffs Ronald Portis, Mardric Lance and Emmett Lynch have brought this class action lawsuit against defendants City of Chicago, Terry Hillard, Joseph Griffin, John Risley, Francis Kehoe, Evert Johnson and Robert Johnson asserting claims under 42 U.S.C. § 1983 for violations of their federal civil rights. Plaintiffs, who were arrested for nonviolent ordinance violations which impose only a fine, allege they were "unlawfully detained for prolonged periods of time after completion of all administrative steps incident to their arrests for non-custodial ordinance violations," in violation of their civil rights. *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1284010, at *1 (N.D. Ill. June 10, 2004).[1] This matter is before the court for ruling on *Defendant's Motion to Quash Plaintiffs' Twelfth Set of Interrogatories*[2] and *Plaintiffs' Motion to*

---

[1] The district court has certified a class defined as "all persons who, during the class period, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed." *Id.*

[2] According to defendants, the interrogatories at issue are actually the thirteenth set of interrogatories served by plaintiffs. The court shall refer to the interrogatories as the twelfth set, however, because that is the title on the discovery served by plaintiffs.

*Compel*, which seeks responses to plaintiffs' twelfth set of interrogatories. As explained below, both defendants' motion to quash and plaintiffs' motion to compel are granted in part and denied in part.

**Background**

Plaintiffs' twelfth set of interrogatories relate to interrogatories 5 and 6 from plaintiffs' fifth set of interrogatories. On August 19, 2004, plaintiffs served defendants with a fifth set of interrogatories which asked, as relevant here, whether "there is a classwide explanation for the detention of arrestee-class members that exceeds four hours from the time of arrest to the time of release" (interrogatory number 5) and whether "there is a classwide explanation for the detention of arrestee-class members that exceeds two hours from the time of lockup and booking to the time of release" (interrogatory number 6). (Pls.' Mot., Ex 2.) On October 26, 2004, plaintiffs filed a motion to compel answers to interrogatories 5 and 6 (as well as others),[3] because defendants had not yet filed any answers or objections. Plaintiffs withdrew that motion to compel on November 4, 2004, however, after receiving responses from defendants. In *Defendants' Answers and Objections to Plaintiffs' Fifth Set of Interrogatories* dated November 2, 2004, in addition to raising several objections to interrogatories 5 and 6, defendants answered that "the arrestee class members' detentions lasted less than 48 hours and are thus presumptively reasonable under the governing Supreme Court law set forth in *County of Riverside v. McLaughlin* [500 U.S. 44 (1991)] and its progeny."[4] (Defs.' Mot. to Quash, Ex. 3.)

---

[3]*See Plaintiffs' Motion to Compel Defendants to Provide Answers to Plaintiffs' Second Supplemental Interrogatories and Fifth Set of Interrogatories* (Docket 158).

[4]The district court has previously rejected defendants' reliance on the *Riverside* forty-eight hour rule. *E.g., Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1284010, at *1-2 (N.D.

2

On December 8, 2004, plaintiffs filed a second motion to compel answers to interrogatories 5 and 6 (as well as others),[5] asserting that defendants' answers to those interrogatories were nonresponsive. In briefing that motion, defendants took the position that the *Riverside* explanation was their answer, whereas plaintiffs contended that the *Riverside* explanation was really an objection that no explanation was necessary. At the hearing on the motion to compel on January 11, 2005, the court informed the parties that it made no difference whether the *Riverside* explanation was characterized as an answer or objection. Rather, the significant issue was whether defendants intended to offer a classwide explanation at trial for the length of the class members' detentions other than their *Riverside* explanation. In other words, if defendants intended to rely solely on their *Riverside* explanation, they were entitled to do so, but if there was more to their defense, they had to disclose their position. The court thus ruled that if defendants intended to offer a classwide explanation other than their *Riverside* explanation at trial, defendants had to disclose the classwide explanation by supplementing their answers to interrogatories 5 and 6 no later than Friday, January 14, 2005. (Minute Order of 1.11.05.)[6]

In *Defendants' Court-Ordered Supplemental Answers and Objections to Interrogatories 5 and 6 of Plaintiff's Fifth Set of Interrogatories*, in addition to raising further objections and noting that their investigation continued, defendants supplemented their answers as follows:

> The evidence shows that the length of the detentions was reasonable under the Fourth Amendment. There is a natural and widespread backlog within the

---

Ill. June 10, 2004).

[5]*See Plaintiffs' Motion to Compel Defendants to Provide Answers to Plaintiffs' Second Supplemental Set of Interrogatories and Fifth Set of Interrogatories* (Docket 181).

[6]Neither party appealed this order.

> Chicago Police District stations that existed during the class period, and that
> exists where there is a ratio of arrestees to total police force of approximately
> 20:1, let alone a ratio of arrestees to the personnel working intake, processing and
> release at the district stations, which far outstrips 20:1. Similarly, unavoidable
> delays can be caused by there being a large number of arrestees on a given night in
> a given district, there being people [that] are arrested in large groups, transporting
> arrested persons from one facility to another, personnel shortages, personnel
> deployment, unusual circumstances in a district, and myriad other practical
> realities. The unavoidable delays that occur, combined with the total lack of any
> evidence of improper purpose creating such delay, establishes that the length of
> the detentions was reasonable.

(Defs.' Mot. to Quash, Ex. 4.) After reviewing the supplemental answers, in a minute order dated January 19, 2005, the court denied plaintiffs' motion to compel as it related to interrogatories 5 and 6, noting that defendants had supplemented their answers and further explained their objections.

According to plaintiffs, the supplemental answers to interrogatories 5 and 6 are vague, not fully responsive, and fail to address important parts of the questions. Rather than returning to court with another motion to compel or appealing the court's order of January 19, 2005, plaintiffs opted to serve the twelfth set of interrogatories and an accompanying document request in an effort to obtain further detail. For example, in the twelfth set of interrogatories, plaintiffs ask defendants (1) to define the term backlog used in the supplemental answers, (2) to identify, by date and police station, when a backlog existed that explains the delays in releasing class members from detention, (3) to explain in detail how a backlog causes or explains such delays, (4) to identify all documents, including but not limited to reports, studies, or analyses, that explain that a backlog causes or explains such delays, (5) to identify each person who will testify to the fact that a backlog explains or causes such delays, and (6) to identify and explain all reasons why class members were not issued a ticket rather than arrested "once they were

4

identified and it was determined that there were no warrants for their arrest or when it was determined that they would not be fingerprinted when a backlog exists." (Pls.' Mot., Ex. 6, Interrog. 3.) Plaintiffs ask similar questions regarding the 20:1 ratio, personnel shortages, personnel deployment, arrests of people in large groups, etc.

Defendants now ask the court to quash plaintiffs' twelfth set of interrogatories, contending that some of the questions are repetitive of previously served interrogatories, and that the remainder of the interrogatories are abusive and oppressive. Plaintiffs counter with a motion to compel responses to the twelfth set of interrogatories, which plaintiffs characterize as "specific, focused discovery seeking information that is not only relevant but necessary and that has not been provided." (Pls.' Mot. Compel at 3.)

**Discussion**

The use of interrogatories is governed by Rule 33 of the Federal Rules of Civil Procedure, "which is intended to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at trial." Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2162. According to the Manual for Complex Litigation, the primary purpose for interrogatories is to "help determine the existence, identity, and location of witnesses, documents and other tangible evidence as a prerequisite to planning further discovery." *Manual for Complex Litigation, Fourth*, § 11.461 (1994). Under Rule 33, each interrogatory must be "answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Rule 33 thus imposes a duty to provide full answers to interrogatories—*i.e.*, all the

information within the responding party's knowledge and control. *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 289963, at *2 (N.D. Ill. Feb. 7, 2005); *Hanley v. Como Inn, Inc.*, No. 99 C 1486, 2003 WL 1989607, at *4 (N.D. Ill. Apr. 28, 2003).

Although as a general matter, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim of defense of any party[,]" Fed. R. Civ. P. 26(b)(1), discovery is not without limits. "[T]he manner and scope of discovery must be tailored to some extent to avoid harassment or being oppressive." *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 926-927 (N.D. Ill. 2003). A court has power under Rule 26(b)(2) of the Federal Rule of Civil Procedure to limit the frequency or extent of use of otherwise permissible discovery methods if the discovery sought is unreasonably cumulative or duplicative, if the discovery is obtainable from some other source that is more convenient, less burdensome, or less expensive, if the party seeking discovery has had ample opportunity to obtain the information sought, and/or if the burden or expense of the discovery outweighs its likely benefits. Fed. R. Civ. P. 26(b)(2); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Defendants' answers to interrogatories 5 and 6, as supplemented, provide a broad statement of defendants' classwide explanation for the length of the class members' detentions. In a nutshell, defendants' position is that there is natural and widespread backlog in processing arrestees at police stations throughout the City of Chicago. Plaintiffs contend defendants' answers are completely inadequate. While the court agrees that plaintiffs are entitled to some additional detail, plaintiffs' twelfth set of interrogatories are riddled with problems, ranging from being cumulative to being burdensome. As explained below, the court is quashing the twelfth set

of interrogatories in part, but ordering defendants to provide some of the information sought in the twelfth set of interrogatories.

## A.     Interrogatories 1 & 2

The first interrogatory of the twelfth set asks defendants to describe in detail all of the reasons why "class members individually or as a class were not issued a ticket once they were identified and it was determined that there were no outstanding warrants for their arrest." (Pls.' Mot., Ex. 6.) This interrogatory is cumulative of discovery previously served, yet more oppressive. The court has given plaintiffs broad latitude to take discovery regarding the City of Chicago's policies and practices for issuing tickets and for arresting persons who violate non-jailable ordinances, and to discover information regarding individuals who have been ticketed for non-jailable ordinance violations. (*E.g.*, Order of 7.6.04; Order of 1.11.05; Minute Order of 1.19.05.) Asking for each and every individual and classwide reason that the arrestee class members were not ticketed instead of arrested, however, takes the ticketing discovery one step further, crossing into the realm of unreasonably burdensome discovery. There are thousands of class members in this case, and as plaintiffs themselves acknowledge, they are challenging the reasonableness of the lengths of their detentions, not the fact that they were arrested. Because interrogatory number one exceeds the limits of fairness, that interrogatory is quashed.[7]

The second interrogatory asks defendants to describe in detail the steps involved in processing the class members as of January 1, 2000 between the time the arrestees were issued a

---

[7]To be clear without being repetitive, where the court grants defendants' motion to quash as it relates to a particular interrogatory, plaintiffs' motion to compel is denied. Likewise, where the court grants plaintiffs' motion to compel regarding a particular interrogatory, defendants' motion to quash is denied.

7

CB number and the time they were released, to describe any changes in those processing steps since January 1, 2000, and to explain the reason for any such changes. This interrogatory is unrelated to interrogatories 5 and 6 of the fifth set, and defendants offer no particular reason why the interrogatory should be quashed. Accordingly, regarding the second interrogatory, defendants' motion to quash is denied and plaintiffs' motion to compel is granted.

### B. Interrogatories 3-11

Interrogatories 3-11 ask defendants detailed questions regarding terms used in their supplemental answers to interrogatories 5 and 6 from the fifth set. For example, as explained earlier, interrogatory three asks defendants (1) to define the term backlog used in the supplemental answers, (2) to identify, by date and police station, when a backlog existed that explains the delay in releasing class members from detention, (3) to explain in detail how backlog causes or explains such delays, (4) to identify all documents, including but not limited to reports, studies, or analyses, that explain that a backlog causes or explains such delays, (5) to identify each person who will testify to the fact that a backlog explains or causes such delays, and (6) to identify and explain all reasons why class members were not issued a ticket rather than arrested "once they were identified and it was determined that there were no warrants for their arrest or when it was determined that they would not be fingerprinted when a backlog exists." (Pls.' Mot., Ex. 6, interrog. 3.) Plaintiffs follow with similar questions regarding the terms "20:1 ratio" (interrogatory 4), "a large number of arrestees" (interrogatory 5), "large groups" (interrogatory 6), "personnel shortage" (interrogatory 8), "personnel deployment" (interrogatory 9), and also asks comparable questions regarding how the transportation of arrestees from one facility to another causes unavoidable delays, and what types of "unusual circumstances" and

8

"myriad other practical realities" cause such delays (interrogatories 7, 10-11 respectively).

Aside from one exception, plaintiffs' requests for definitions of various terms seek unnecessary clarification. The terms "backlog," "personnel shortage," "personnel deployment," "large number of arrestees" and "large groups" are not vague—they are understandable on their face. Moreover, those terms do not seem amenable to a precise definition, at least in the context of defendants' classwide explanations. Plaintiffs understandably want more information regarding how, for example, a "large number of arrestees" or a "large group" creates an unavoidable delay in processing or otherwise contribute to backlog in a police station. Requiring defendants to come up with a definition is not the answer, however. Rather, in the court's view, those are areas plaintiffs can more effectively explore through depositions, which allow greater flexibility than interrogatories for plaintiffs to frame questions and follow-up on the answers. Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2163. The term "20:1 ratio," on the other hand, requires further explanation. Plaintiffs seek a definition "in terms of the type of police personnel included (*e.g.*, does it include all people on duty, civilian personnel, etc.) and the type of arrestees (*e.g.*, felony, misdemeanor, etc.) That is a reasonable inquiry which defendants are ordered to answer to the best of their ability. Additionally, defendants are directed to identify what information the 20:1 ratio is derived from. Likewise, defendants are directed to respond, to the full extent possible, to subpart (e) of interrogatory 4, which asks defendants to "state the desired ratio of police personnel and arrestees and identify all documents that support defendants answer." (Pls.' Mot., Ex. 6, interrog. 4(e).)

In subpart (a) of interrogatories 3-6 and 8-11, plaintiffs ask defendants to identify, by date and police station, when a given problem—backlog, the 20:1 ratio, large number of arrestees, the

arrest of large groups, personnel shortages, personnel deployment issues, unusual circumstance, and myriad other practical realities—existed that explains the delay in releasing class members from detention. (*See* Pls.' Mot., Ex. 6, subpart. (a) of Interrogs. 3-6 and 8-11.) This request imposes an unreasonable burden on defendants. To answer plaintiffs' request, defendants would have to examine the events that took place at every police station in the city every day for a period several years. If defendants have conducted such an analysis, the court will require them to disclose the results (as discussed further below). However, certain statements made by defense counsel at the hearing on March 15, 2005 left the court with the understanding that defendants have not performed such an analysis. Perhaps an analysis of the daily events taking place at police stations across the city would bolster defendants' classwide explanation. But if defendants have decided not perform such analysis, the court will not order them to do so. It is their prerogative to decide how to present their defense. (*But see* Section D below regarding duty to disclose and to supplement). Subpart (a) of interrogatories 3-6 and 8-11 are therefore quashed.

In subpart (b) of interrogatories 3-11, plaintiffs ask defendants to explain in detail how a particular problem (backlog, the 20:1 ratio, a large number of arrestees, the arrests of large groups, transportation of arrested persons from one facility to another, a personnel shortage, personnel deployment issues, unusual circumstances, and myriad other practical realities) causes or explains unavoidable delays in releasing class members from custody. (*See* Pls.' Mot., Ex. 6, subpt. (b) of interrogs. 3-11.) On a general level, the crux of defendants' classwide explanation is evident from the supplemental answers: in busy, metropolitan police stations like Chicago's, there regularly is a backlog of work to do, and the backlog is exacerbated when there are a large number of arrestees, personnel shortages, etc. To the extent plaintiffs wish to explore

defendants' explanation in greater detail and explore whether particular problems occur routinely or on a sporadic basis, plaintiffs can more efficiently accomplish their goal through depositions, which are preferable to interrogatories "if a searching interrogation of the other party is desired." Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2163. As noted earlier, depositions offer greater flexibility than interrogatories for plaintiffs to frame questions, follow up on the deponent's answers, and clarify evasive answers. *Id.* As a result, the court quashes subpart (b) of interrogatories 3-11.

Plaintiffs also ask defendants to identify all documents that explain how a particular problem (backlog, personnel shortages, arrests of large groups, etc.) causes or explains unavoidable delays in releasing class members from police custody. In their supplemental answers, defendants identified five categories of documents: "(i) the arrest reports of the members of the class certified by Judge Gettleman on March 5, 2003; (ii) watch commander logs, rosters of persons in custody, and detention reports for the dates of the arrests of the members of the class certified by Judge Gettleman on March 5, 2003; (iii) the general orders previously produced in this case; (iv) any statistical analysis of any of the above; and (v) annual reports of the Chicago Police Department." (Pls.' Mot., Ex. 6 at 7.) Plaintiffs contend they need more specific responses, so in subpart (c) of interrogatories 3-11, plaintiffs ask defendants to identify all documents, including but not limited to any reports, studies or analyses, that explain or demonstrate how a particular problem (*e.g.*, backlog, the 20:1 ratio, personnel shortages, etc.) explains the delay in releasing class members after they have been assigned a CB number. (Pls.' Mot., Ex. 6., interrogs. 3-11 at subpart (c).) At the hearing on March 15, 2005, plaintiffs further informed the court that although they do not need more specific responses relating to the arrest

reports and general orders, they need defendants to produce the Chicago Police Department's annual reports, and they need more specific responses regarding which watch commander logs, rosters of persons in custody, and detention reports defendants are relying on to support their classwide defense.

From the twelfth set of interrogatories, it is clear that plaintiffs want to know whether defendants have done any analysis of the documents that supports defendants' classwide explanation, and if so, plaintiffs want to review any reports, studies or analyses that exist. Although defendants' supplemental answers to interrogatories 5 and 6 of the fifth set reference "any statistical analysis" of the arrest reports, watch logs, detention reports and logs of persons in custody, at the hearing on March 15, 2005, defendants' counsel reported that they have not undertaken such an analysis, at least not at this point. As noted earlier, it is defendants' prerogative to determine how to defend their case—the court will not order defendants to conduct an analysis to support their theory. But in the event defendants intend to offer an analysis, report, or study in support of their classwide explanation, defendants must disclose any such analysis, report or study in time for plaintiffs to take necessary discovery. *See* Fed. R. Civ. P. 26(e)(2) (requiring supplemental disclosures to interrogatories when warranted); Fed. R. Civ. P. 37(c)(1) (barring parties from using evidence at trial that is responsive to discovery requests but has not been disclosed, unless the failure to disclose is harmless). It is unclear whether this is something defendants intend to pursue, and if so, whether it is something they intend to pursue through a fact witness, through an expert witness, or both. If defendants plan to offer *only* expert testimony on the matter, disclosure can wait until expert discovery. If, however, defendants intend to present a report, analysis or study through a fact witness, defendants must supplement

their interrogatory answers and disclose any such report, analysis or study no later than April 29, 2005, in order to allow plaintiffs time to take any necessary, additional discovery before fact discovery closes on May 16, 2005.

Regarding identification of documents supporting their classwide defense, defendants are also ordered to produce the annual reports of the Chicago Police Department that are referenced in defendants' supplemental answers to interrogatories 5 and 6. As for plaintiffs' oral request for more specificity regarding which watch commander logs, rosters of persons in custody, and detention reports defendants are relying on to support their classwide defense, the court declines to order defendants to identify such documents by bates number because it would be unreasonably burdensome to require defendants to make such specific identifications.[8] There are a large number of detention reports, and for every day of the class period, which spans several years, there are three watch commander logs per day and a roster of persons in custody for each of the three daily shifts. In addition to being burdensome, such an order would be tantamount to ordering defendants to perform an analysis that, thus far, they have chosen not to undertake. Defendants' motion to quash is granted in part and denied in part as it relates to subpart (c) of interrogatories 3-11.

The next issue relates to defendants' identification of witnesses with knowledge regarding their classwide defense. Interrogatories 5 and 6 of the fifth set asked defendants to identify all

---

[8] Under Rule 33(d) of the Federal Rules of Civil Procedure, if a party opts to produce business records rather than provide a written response to an interrogatory because the burden of ascertaining the answer is substantially the same for each side, the responding party must specifically identify the records from which the answer may be obtained. Fed. R. Civ. P. 33(d). Here, however, defendants did not invoke Rule 33(d)—they provided a written explanation of their classwide defense, albeit a broad one.

witnesses with knowledge of defendants' classwide explanations. In their supplemental responses, defendants identified as witnesses all members of the class, and "all members of the Chicago Police Department who were involved in the arrests and detentions and who might appear on the arrest records produced to plaintiffs, including arresting officers, watch commanders, desk sergeants and lockup personnel, many of whom have already been deposed in this action, including but not limited to all witnesses produced for deposition pursuant to Rule 30(b)(6) notice." (Defs.' Mot. to Quash, Ex. 4 at 7.) In subpart (d) of interrogatories 3-11 of the twelfth set, plaintiffs followed up with a more specific request, asking defendants to identify each person who will testify to the fact that a particular problem (backlog, personnel shortages, etc.) explains or causes the delays in releasing class members from police custody. (Pls.' Mot., Ex. 6, interrogs. 3-11, subpart (d).) Although defendants' supplemental responses to interrogatories 5 and 6 responded to the interrogatories as originally posed, the court finds that at this stage in discovery, in order to avoid the unfair surprise at trial, plaintiffs are entitled to a list of which witnesses defendants are likely to call to testify regarding its classwide defense. Plaintiffs need to decide which witnesses to depose, and they cannot make an informed decision when the pool of potential witnesses includes every class member and every police officer who interacted with the class members. Accordingly, the court denies the motion to quash as it relates to subpart (d) of interrogatories 3-11.

In subpart (e) of interrogatories 3 and 5-11 of the twelfth set, plaintiffs ask defendants to identify and explain all reasons—including but not limited to policy, custom and practice reasons—why class members were not issued a ticket rather than arrested "once they were identified and it was determined that there were no warrants for their arrest or when it was

14

determined that they would not be fingerprinted" when a particular problem (backlog, personnel shortages, arrests of large groups, etc.) would cause a delay in their release. (Pls.' Mot., Ex. 6, subpart (e) of interrogatories 3, 5-11.) Like the first interrogatory of the twelfth set discussed earlier, the court finds these requests cumulative of the ticketing discovery previously served, yet more oppressive. Subpart (e) of interrogatories 3 and 5-11 are therefore quashed.

Interrogatory number 7 of the twelfth set relates to defendants' position that the transportation of arrested persons from one facility to another contributes to delays in releasing the class members. The court has already ruled on each part of interrogatory 7 except for subpart (a). In subpart (a) of interrogatory number 7, plaintiffs ask defendants (1) to state whether there are circumstances in which a person who is arrested for non-jailable ordinance violation would be transferred from one facility to another *after* the police have identified the arrestee, determined that there are no outstanding warrants, determined that the arrestee will not be fingerprinted, and have issued the arrestee a CB number; (2) if so, to state under what circumstances a transfer would occur; and (3) to identify all documents, including Chicago Police Department General Orders, relating to such transfers. This is a reasonably focused inquiry, aside from the request to identify documents, which could be construed broadly.[9] The court limits the request for identification of documents to Chicago Police Department General Orders and documents reflecting policies, practices or customs relating to transfers. With that limitation,

---

[9]For example, assuming there are circumstances in which class members would be transferred to another facility after many of the processing steps have taken place, the request for identification of documents could be broadly construed to require defendants to identify every document relating to every class member who was transferred from one facility to another. Such a requirement would require defendants to search through the records relating to every class member, and thus would impose an unreasonable burden.

15

the court otherwise denies defendants' motion to quash as it relates to subpart (a) of interrogatory 7.

In the initial paragraph of interrogatories 10 and 11 of the twelfth set, plaintiffs ask defendants to identify each "unusual circumstance" and to identify the "myriad of other practical realities" that explain unavoidable delays in releasing the class members from custody.[10] It is evident that defendants used those terms as catch-all expressions. Defendants need not further clarify those phrases in their written interrogatory answers at this time, however, as addressed in Section D below, defendants have a duty to supplement their interrogatory answers under Rule 26(e)(2). Additionally, plaintiffs may explore the "unusual circumstances" and "myriad of other practical realities" in depositions.

C.     **Interrogatory 12**

The last interrogatory of the twelfth set, interrogatory 12, asks defendants to identify by title all databases containing computer-accessible information that the City of Chicago maintains (or has maintained, or has access to) that contain information regarding (a) arrests, (b) names of arrestees, (c) date, time, shift, station and/or district of arrest, and (d) personnel, staffing and deployment data by date, shift, station and/or district. Defendants raised no specific objection to interrogatory 12, and the court finds that it is a reasonably focused inquiry regarding information relevant to defendants' classwide defenses. Accordingly, the court denies defendants' motion to quash as it relates to interrogatory 12.

---

[10]The court has already ruled on subparts (a–e) of interrogatories 10-11 in other parts of this opinion.

16

## D. Defendants' Duty to Supplement Interrogatory Answers under Rule 26(e)(2)

The court reminds defendants that under Rule 26(e)(2) of the Federal Rules of Civil Procedure, they have a duty to supplement their interrogatory answers. Fed. R. Civ. P. 26(e)(2). Further, if defendants fail to properly supplement their answers as required by Rule 26(e)(2), defendants will be barred under Rule 37(c)(1) from using evidence at trial that has not been disclosed, unless the failure is harmless. Fed. R. Civ. P. 37(c)(1); *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 22682361, at *2 (N.D. Ill. Nov. 12, 2003). In other words, if defendants' persist with their broad classwide explanation in response to interrogatories 5 and 6, they are stuck with those answers and will not be permitted to present more specific, detailed evidence at trial that has not been disclosed to plaintiffs. By way of example only, if defendants persist with the broad explanation that "personnel shortages" contribute to the delays in releasing class members from custody, defendants should not expect to present a statistical analysis regarding personnel shortages at trial to support their general explanation.[11]

## E. Objection to the Number of Interrogatories Served by Plaintiffs

Defendants have also objected that plaintiffs have far exceeded the number of interrogatories permitted as of right under Rule 33 of the Federal Rules of Civil Procedure. Under Rule 33, a party has a right to serve 25 written interrogatories upon another party, and may obtain leave of court to serve additional interrogatories "consistent with the principles of Rule 26(b)(2)." Fed. R. Civ. P. 33. Earlier in discovery, the court exercised its discretion under Rule

---

[11] If plaintiffs' interrogatories relate to issues that defendants intend to address in expert discovery, defendants should disclose those intentions.

26(b)(2) to expand the limit on the number of interrogatories because this is a class action lawsuit. Specifically, in an order issued July 6, 2004, the court overruled defendants objection that plaintiffs had exceeded the 25 interrogatories permitted under Rule 33, "primarily because this is a complex class action involving multiple plaintiffs." (Order of 7.6.04 at 2 n.1, docket 114.) The court further explained that it had no intention of permitting unlimited interrogatories, and directed the parties to be prepared to address the appropriate limits at the next status. (*Id.*) The issue regarding interrogatory limits fell through the cracks, however, and has not been addressed yet. Although the court does not know how many interrogatories the parties have served, it is clear that plaintiffs have served more than 25 interrogatories.[12] The court has not based its ruling on defendants' motion to quash and plaintiffs' motion to compel on the number of interrogatories that have been served. However, at the hearing on April 27, 2005, the parties should be prepared to address how much additional written discovery (if any) they anticipate serving in this matter.

## Conclusion

For the reasons set forth above, defendants' motion to quash plaintiffs' twelfth set of

---

[12]Defendants contend that plaintiffs have served more than 200 interrogatories, counting subparts. (Defs.' Mot. to Quash ¶ 16.) The accuracy of that count is questionable, however. "[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question. On the other hand, an interrogatory which contains subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664-665 (D. Kan. 2004). According to defendants' count, the twelfth set of interrogatories alone totals 49 interrogatories counting subparts, yet by the court's count, the total is more like 12. Defendants likely counted every subpart as a separate interrogatory, but in the court's view, most of the subparts for each of the 11 interrogatories were directed at the common theme of the particular interrogatory. The exception was subpart (e) included in interrogatories 3, 5, 7-11 which asks for the reasons the class members were not ticketed. The court deems this an inquiry into a separate, discrete area, and counts it as a twelfth interrogatory.

interrogatories is granted in part and denied in part, as is plaintiffs' motion to compel responses to those interrogatories. To the extent defendants' motion to quash is denied, defendants have 14 days to answer plaintiffs' twelfth set of interrogatories. Additionally, if defendants intend to present a report, analysis or study in support of their classwide defenses through a fact witness (as opposed to an expert witness), defendants must supplement their interrogatory answers and disclose any such report, analysis or study no later than April 29, 2005, in order to allow plaintiffs time to take any necessary, additional discovery before fact discovery closes on May 16, 2005.

ENTERED:

*[signature]*

NAN R. NOLAN

United States Magistrate Judge

Dated: April 15, 2005