IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD PORTIS, MADRIC LANCE, and EMMETT LYNCH, individually and on behalf of a class, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, et al. <br><br> Defendants. | No. 02 C 3139 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION & ORDER

Plaintiffs Ronald Portis, Madric Lance and Emmett Lynch have brought this class action lawsuit against defendants City of Chicago ("the City"), Terry Hillard, Joseph Griffin, John Risley, Francis Kehoe, Evert Johnson and Robert Johnson asserting claims under 42 U.S.C. § 1983 for violations of their federal civil rights. Specifically, plaintiffs were arrested for nonviolent ordinance violations which impose only a fine, not jail time. Plaintiffs allege they were "unlawfully detained for prolonged periods of time after completion of all administrative steps incident to their arrests for non-custodial ordinance violations," in violation of their civil rights. *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1284010, at *1 (N.D. Ill. June 10, 2004).[1] This matter is presently before the court for ruling on Defendants' Motion to Compel Deposition Testimony of Whitman Soule. As explained below, defendants' motion is granted in part and denied in part.

---

[1] The district court has certified a class defined as "all persons who, during the class period, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed." *Id.*

I.  BACKGROUND

Soule is a computer consultant whom plaintiffs retained to assist in creating a database of information regarding the class members' arrests. "The information in the database was gathered from computer databases and hard copies of arrest reports produced by the City [during discovery]." *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 1535854, at *1 (N.D. Ill. July 7, 2004) (citation omitted). Some of the information was merged into the database from the City's computer-readable records, whereas other data was manually entered from hard copies of arrest reports. The database includes fields such as the name and address of each arrestee class members, the arrestee's central booking number, the date and time of arrest, the booking date, the time the arrestee was received in lockup, the time and date the arrestee was released on bond, etc. *Id.*

Plaintiffs originally proposed creating the database as a joint project with defendants, but defendants declined. When defendants later sought to compel production of the database, plaintiffs opposed production, claiming the database was attorney work product that defendants were not entitled to, and further arguing that if the database had to be produced, defendants should have to share the cost of creating the database. *Id.* As explained more fully in the court's order of July 6, 2004,[2] over plaintiffs' objections, the court found that although the database was entitled to the protection given to fact work product, defendants had demonstrated both a substantial need for the database and that they were unable to obtain the substantial equivalent of the information compiled in the database without undue hardship. *Id.* at *3-5. The court

---

[2]The opinion was issued on July 6, 2004; Westlaw's date of July 7, 2004 reflects the date the opinion was docketed.

therefore granted the motion to compel in part, finding that: (i) "such a consolidated compilation of relevant data is an invaluable tool for both sides to assess the merits of the litigation[;]" (ii) "giving the City access to the database should expedite the class-notice process considerably[;]" (iii) "plaintiffs will not be unduly prejudiced by sharing [the database] with the City now, provided they are fairly compensated for their extensive work[;]" and (iv) even though the City had all the information necessary to create a similar database, requiring the City to duplicate plaintiffs' effort "would be a complete waste of time and money." *Id.* at *4. In order to avoid seriously prejudicing plaintiffs, who had expended considerable resources to create the database, the court further ordered the City to pay its fair share of the expenses incurred to create the database. *Id.* at *6.

Faced with having to pay its share of the database, the City initially declined a copy of the database, but then changed its position several months later. At that point, a dispute arose regarding what the court meant when it ordered the parties to split the expenses. As part of that dispute, the City wanted to depose Soule and the paralegals who worked on the database to find out how much they were paid for their work on the database. In resolving the dispute, as stated more fully in its order of December 6, 2004, the court explained that the expenses, or costs, of compiling the database should "be calculated based on the number of hours Mr. Soule and the paralegals spent on the project, multiplied by their hourly billing rates, plus other costs, if any." *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 2812084, at *2 (N.D. Ill. Dec. 7, 2004).[3] The court thus quashed the City's document requests and deposition notices, finding that

---

[3]The opinion was issued on December 6, 2004; Westlaw's date of December 7, 2004 reflects the date the opinion was docketed.

discovery aimed at ascertaining how much Soule and the paralegals were paid, as opposed to discovering their billing rates, was unnecessary.[4] *Id.* at *4.

After the City[5] eventually received its copy of the database, the City alerted plaintiffs and the court that it wanted to depose Soule regarding the database. Plaintiffs expressed their hope that the parties would offer a joint database at trial, and initially suggested an informal meeting with Soule during which questions about the database could be addressed. The City, however, wanted a deposition. As the court explained at the hearing on April 27, 2005, whether or not the City eventually agreed to a joint database, it was entitled to depose Soule about the database. Plaintiffs did not object to producing Soule for a deposition.[6] The issue was whether he should be deposed during fact or expert discovery. Throughout the litigation, plaintiffs had resisted labeling Soule as an expert, referring to him as a "consultant" and their "computer guy." With the fact discovery cutoff approaching (although the deadline was subsequently extended), the City needed to know whether Soule was going to be identified as an expert, because if not, the City had to complete his deposition before fact discovery closed. The court thus directed plaintiffs to clarify whether Soule would be an expert witness. At the hearing on May 4, 2005,

---

[4]In any event, Soule, as a consultant, was compensated at his hourly billing rate, unlike the paralegals, employees of plaintiffs' counsel who are paid at one rate and billed at another. *Id.* at *3.

[5]The motion to compel was filed on behalf of all defendants, not just the City; for purposes of this opinion, references to the City includes the individual defendants as well.

[6]Earlier in the litigation, plaintiffs had resisted producing Soule for a deposition out of concern that the City would use the deposition to get access to the database. Once the court ordered production of the database, and ordered the City to share the costs of the creating the database, plaintiffs no longer had that concern.

plaintiffs were not in a position to exclude the possibility that Soule might be an expert witness.[7] As a result, the court ruled that the City was entitled to depose Soule during fact discovery, and that if plaintiffs later identified him as an expert witness, the City could depose him a second time.

The City deposed Soule on June 17, 2005. Prior to the deposition, plaintiffs' counsel wrote a letter to the City's counsel dated June 13, 2005 imposing certain limits to the deposition. Specifically, plaintiffs' counsel stated that in the event the parties failed to agree on a joint database, then Soule would not be a witness and plaintiffs would present the relevant data and any analysis of that data through an expert. Accordingly, plaintiffs' counsel stated that Soule's deposition would be limited to clarifying issues regarding the database and answering any questions regarding the three affidavits Soule had submitted during the course of the litigation. Plaintiffs' counsel further took the position that because Soule "has merely offered technical assistance in creating a database and has performed simple computations based on the database he helped create," Soule's compensation and any reports or summaries Soule had prepared for plaintiffs' counsel in preparation for the case were off limits. In a letter dated June 14, 2005, the City's counsel rejected plaintiffs' counsel's attempt to limit the scope of Soule's deposition. Counsel did not resolve their dispute before Soule's deposition commenced on June 17, 2005, nor did they approach the court to resolve the dispute for them. Instead, the deposition proceeded, but plaintiffs' counsel regularly instructed Soule not to answer questions on grounds

---

[7]There was an open issue regarding whether it would be necessary for Soule to perform certain diagnostic testing to clean up certain issues relating to the database. If the City agreed to a joint database, plaintiffs hoped it would also agree that the diagnostic tests were unnecessary. There is currently no agreement for a joint database, however, so plaintiffs have commenced the diagnostic tests.

that the questions were beyond the scope of the deposition and sought attorney work product. Soule thus did not respond to questions on the following topics: "(1) what sort of materials were considered in creating the database; (2) why certain fields were included in the database; (3) why certain fields were left out and what those fields are; (4) any limitations on what can be learned from the various calculations performed by Mr. Soule; (5) Mr. Soule's compensation arrangements with plaintiffs' counsel . . .; (6) any calculations Mr. Soule did but did not report in his three affidavits; (7) why Mr. Soule chose to include the information he did in his affidavits, and why he did not include other information; (8) what assumptions he made in putting together the database and his affidavits; and (9) any additions to the database since the production of the ticketing data to defendants." (Defs.' Br. in Support of Mot. Compel at 8-9.)

The City filed a motion to compel, seeking an opportunity to re-depose Soule in order to question him about the subjects he declined to discuss at the June 17th deposition. That motion to compel is now fully briefed, and ready for ruling.

## II. ANALYSIS

The issue presented is whether plaintiffs' counsel properly instructed Soule not to answer questions about certain subjects during his deposition. Under Rule 30(d)(1) of the Federal Rules of Civil Procedure, "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)."[8] Fed. R. Civ. P. 30(d)(1). According to the City, plaintiffs improperly restricted the scope of Soule's deposition. Plaintiffs counter that the information sought by the City is both attorney work product protected from discovery under Rule 26(b)(3) and information held by a

---

[8]Rule 30(d)(4) is not at issue here.

non-testifying expert, protected from discovery under Rule 26(b)(4)(B). For the reasons that follow, the court grants the motion to compel in part and denies it in part.

## A. Soule's Compensation

The first issue is whether plaintiffs' counsel properly refused to allow Soule to answer questions relating to his compensation. At the deposition, plaintiffs' counsel instructed Soule not to answer, maintaining that counsel's financial arrangements with Soule were not relevant. Upon being challenged that relevance is not a proper basis to instruct a deponent not to answer, *see* Fed. R. Civ. P. 30(d)(1), plaintiffs' counsel stated that the financial arrangement is "privileged." But no privilege protects the financial arrangement between plaintiffs' counsel and Soule. Soule is likely a necessary witness to lay the foundation for admission of the database, and as the City correctly points out, evidence regarding compensation is relevant to a witness's bias and credibility. *In re Chicago Flood Litig.*, No. 93 C 1214, 1995 WL 437507, at *9 (N.D. Ill. July 21, 1995).

Plaintiffs disagree, contending that Soule will not be a witness at trial, so there is no issue regarding his credibility. This argument is unpersuasive, however. For one thing, plaintiffs concede Soule may be a witness in the event there is a stipulation regarding the database. Additionally, in the event there is no stipulation, plaintiffs have yet to explain how they intend to get the database into evidence without testimony from Soule. When the court asked for an explanation, plaintiffs stated that the Federal Rules of Evidence allow for admission of summaries of voluminous records, evidently referring to Rule 1006. Rule 1006 permits summaries, but does not relieve plaintiffs from their obligation to lay a foundation for the summary. Christopher B. Mueller & Laird C. Kirkpatrick, 5 *Federal Evidence* § 584 (2d ed.

1994) (proponent of summary proof must lay foundation). And although plaintiffs now suggest that the database will be admitted through its testifying expert, plaintiffs have failed to explain how their testifying expert could lay the foundation for a database created by Soule. If plaintiffs have a theory of admissibility that avoids the necessity of Soule's testimony, they have not revealed their theory to the court. Moreover, even if plaintiffs need not call Soule, the City may intend to call him regarding the foundation of the database.[9] Despite plaintiffs' position to the contrary, there remains a distinct possibility that Soule will need to testify at trial. The court therefore finds no basis to preclude questions regarding Soule's compensation on the grounds that Soule will not be a witness at trial.

Plaintiffs also argue that this court has barred the City from asking any questions regarding Soule's compensation, thus suggesting that counsel properly directed Soule not to answer questions in order to enforce a limitation directed by the court. This argument misconstrues the court's order of December 6, 2004 regarding how the City's share of the costs of the database should be calculated. As plaintiffs are well aware, in its order of December 6, 2004, the court quashed the City's notices to depose Soule and the paralegals who worked on the database regarding the amounts paid for their work. *Portis*, 2004 WL 2812084, at *4, 6. The rationale for the ruling was that because Soule's and the paralegals' services were to be reimbursed based upon their hourly billing rates, discovery regarding how much plaintiffs' counsel paid Soule and the paralegals was unnecessary. *Id.* That order quashing the City's earlier notice for Soule's deposition imposed no limitation on Soule's subsequent deposition

---

[9]For example, the City may intend to call Soule to challenge the foundation of the database, or to lay the foundation if the City elects to use database.

8

regarding the database.[10]

Plaintiffs' counsel improperly instructed Soule not to answer questions regarding his compensation—no privilege protects that information, and there was no court-imposed limitation on the subject. *See* Fed. R. Civ. P. 30(b)(1). Accordingly, the City's motion to compel is granted as it relates to testimony regarding Soule's compensation.

## B. Other Subject Areas

Unlike the topic of Soule's compensation, the other subject areas require analysis of the protections afforded a non-testifying expert under Rule 26(b)(4)(B). The City wants to inquire about what sort of materials Soule considered in creating the database, why certain fields were included, why certain fields were left out, any limitations on what can be learned from the database, any calculations Soule has done that were not included in his three affidavits, what assumptions he made in putting together the database and his affidavits, and what additions have been added to the database since the City produced certain ticketing data to plaintiffs. For each of these subjects, plaintiffs invoke the protections of the attorney work product doctrine as well as the protections given to non-testifying experts under 26(b)(4)(B). However, because the Advisory Committee Notes state that the protections afforded to experts should be analyzed

---

[10]Plaintiffs' reliance on one sentence of the order, taken out of context, is unpersuasive. After ruling that discovery regarding the amounts paid to Soule and the paralegals was unnecessary to determine the City's portion of the costs, the court wrote: "Accordingly, the document requests relating to the amounts paid to Mr. Soule and the paralegals are quashed. Likewise, the City is barred from deposing the paralegals and Mr. Soule on this issue." *Id.* To take that language and suggest that the court was forever barring the City from asking questions regarding Soule's compensation is unreasonable. The only issue before the court was whether the City should be allowed to take discovery regarding the amounts plaintiffs' counsel paid Soule and the paralegals for their work to determine the City's share of the database costs. The court found the discovery unnecessary for reasons already explained, and thus quashed the document requests and deposition notices.

9

under Rule 26(b)(4), not the attorney work product doctrine, the court's analysis focuses on Rule 26(b)(4)(B).[11]

As relevant here, Rule 26(b)(4)(B) states that in order to "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial," the party seeking discovery must make "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B). Premised on fundamental concerns about fairness, Rule 26(b)(4)(B) is designed "to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation," "to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation," and "to prevent one party from utilizing the services of the opponent's experts by means of a deposition[.]" *Eliasen v. Hamilton*, 111 F.R.D. 396, 401 (N.D. Ill. 1986) (internal quotation marks and citations omitted). A party seeking discovery under Rule 26(b)(4)(B) "can make a showing of exceptional circumstances when there is no practicable alternative by which they can obtain the information." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997) (citation and internal quotation marks omitted). Exceptional circumstances may exist, for example, where replication of the expert's work would require enormous expenditures of time and resources. *Long Term Capital Holdings v. United States*, No. 01-CV-1290(JBA), 2003 WL 21269586, at *2 (D. Conn. May 6, 2003). Likewise, a court may

---

[11] For that reason, the court finds it unnecessary to address the parties' arguments regarding whether there was waiver of attorney work product.

10

find exceptional circumstances exist "when a non-testifying expert's report is used by a testifying expert as the basis for an expert opinion, or when there is evidence of substantial collaborative work between a testifying expert and a non-testifying expert." *Id.*

In opposing the motion to compel, plaintiffs claim Soule is their non-testifying expert, and thus protected by Rule 26(b)(4)(B).[12] The City responds that characterizing Soule as a non-testifying expert is disingenuous, given that Soule has testified by submitting three affidavits in this case, and that Soule is responsible for coordinating the creation of plaintiffs' database, which is going to be plaintiffs' primary evidence at trial. The court declines to find that Soule is a testifying expert based on the three affidavits previously submitted.[13] At this point, plaintiffs have not identified Soule as "an expert whose opinions may be presented at trial," so Soule is not a testifying expert at this point. *See Employer's Reins. Group v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 424-425 (D. Kan. 2003) ("whether a specially retained expert is regarded as a testifying expert or a consulting expert depends upon whether the party who retained the expert has designated the expert as one who *is expected to be called as a witness at trial*")(emphasis added). For present purposes, the court considers Soule a consulting expert, and thus evaluates whether exceptional circumstances warrant the re-deposition of Soule.

---

[12]Until opposing the motion to compel, plaintiffs have never suggested that Soule is a non-testifying expert. Rather, on numerous occasions, plaintiffs have purposefully avoided referring to Soule as an expert—testifying or not—stating that he is their consultant, or their computer guy, and suggesting that a paralegal could have done the work he is doing. Further, when plaintiffs agreed to produce Soule for his deposition, they never asked the court to limit the scope of his deposition. Needless to say, it would have been helpful if plaintiffs had raised this issue with the court earlier.

[13]The three affidavits were attached to the following pleadings: (1) plaintiffs' memorandum in opposition to defendants' motion to decertify the Rule 23(b)(3) class [docket 97]; (2) plaintiffs' motion to reconsider dismissal of their claim for injunctive relief and memorandum in support of that motion [docket 131]; and plaintiffs' reply memorandum in support of their motion to reconsider dismissal of their claim for injunctive relief [docket 152].

11

But first, the court explains why exceptional circumstances warranted the original deposition of Soule. Here, as explained earlier, plaintiffs raised no objection to producing Soule for deposition, although plaintiffs' counsel unilaterally imposed certain limits on the subject matter. Even if plaintiffs had objected, the court would have permitted the City to depose Soule regarding the creation of the database as a logical extension of the court's order requiring production of the database itself. In ordering production of the database on July 6, 2004, the court overrode plaintiffs' claim of work product because the City had demonstrated a substantial need for the database, and that it could not recreate the database from scratch without the undue hardship of expending extensive, duplicative resources.[14] *Portis*, 2004 WL 1535854, at *4-5. When the court compelled production in July 2004, it was not yet clear how plaintiffs would use the database. *Id.* at *4. Since that order was entered, however, plaintiffs have made it clear that they intend to present their case-in-chief primarily through the database. In light of the fact that the database is going to be the plaintiffs' main evidence at trial, the City is entitled to explore what was involved in creating the database. Soule is undisputably the person most knowledgeable about the database and its creation, what information went into the database, how the data was input, what procedures were followed to ensure accuracy, etc. Because it would have been impracticable for the City to obtain such information by other means, extenuating circumstances existed warranting Soule's deposition. *See Bank Brussels Lambert*, 175 F.R.D. at

---

[14]The court analyzed the database under the work product doctrine because that was the argument plaintiffs raised. Had the court evaluated the database as the work of a consulting expert rather than as attorney work product, the result would have been the same. One of the situations commonly recognized as constituting exceptional circumstances "is where it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive." *Bank Brussels Lambert*, 175 F.R.D. at 44. Here, although it was possible for the City to recreate the database, it would have been cost-prohibitive to do so, as the court explained in its July 6, 2004 order. *Portis*, 2004 WL 1535854, at *4-5.

12

44.

This conclusion is supported by decisions in other cases. For example, in *Pearl Brewing Co. v. Schlitz Brewing Co.*, 415 F. Supp. 1122 (S.D. Tex. 1976), two consulting computer experts designed computer systems which formed the foundation of the testifying economics expert's testimony. *Id.* at 1135. The court allowed the defendant to depose the two consulting computer experts in order to discover the mechanical methods, tests, procedures, assumptions and comparisons they utilized in creating the computer systems. *Id.* at 1138-1139. Extenuating circumstances warranted the consulting computer experts' depositions, notwithstanding the fact that the economics expert managed and oversaw the consulting computer experts' work, because the computer consultants were the most familiar with the computer systems, and thus could "provide necessary details not available from any other source as to the work actually done on the computer systems and as to the details and validity of such work." *Id.* at 1135. Similarly, in *Derrickson v. Circuit City Stores, Inc.*, Civ. A. No. DKC 95-3296, 1999 U.S. Dist. Lexis 21000, at *18-20 (D. Md. Mar. 19, 1999), the testifying expert's report was based in part on tables drawn from data that the expert's assistant had compiled and analyzed under the testifying expert's general direction. The court ruled that regardless of whether the assistant was a non-testifying expert, the defendant was entitled to know what work the expert's assistant performed in order to be able to properly cross-examine the expert.[15] *Id.* at *18-19.

Here, as in *Pearl Brewing* and *Derrickson*, Soule created the computer database that will

---

[15]In *Derrickson*, the court ordered the plaintiff to disclose the assistant's underlying work. *Id.* at *19. The court further stated its opinion that the defendant should be entitled to depose the assistant regarding his work. *Id.* at *18 n.1. However, because the issue was not raised by the parties, the court did not order the assistant's deposition. *Id.*

13

serve as the foundation for the opinions of plaintiffs' testifying expert. Accordingly, Soule's deposition was necessary in order for the City to ascertain what work was actually done in creating the database, and to evaluate the details and validity of the work. *Pearl Brewing*, 415 F. Supp. at 1135; *see Long Term Capital Holdings*, 2003 WL 21269586 at *2 (exceptional circumstances may exist when non-testifying expert's work forms the basis for testifying expert's opinion); *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002) (allowing deposition of non-testifying expert who provided substantial assistance in preparing the trial expert's report).

The question, then, is whether the scope of Soule's deposition should be limited. Although exceptional circumstances warrant the deposition of Soule, the court finds that it would be unfair to plaintiffs to permit a limitless inquiry. The purpose of the deposition is to allow the City to explore the thoroughness and accuracy of Soule's work on the database in order to assess the database that will be plaintiffs' primary trial evidence and in order to facilitate the City's examination of plaintiffs' expert, whose opinions will be based on the information in the database. In light of that purpose, the City is entitled to ask questions regarding the data, methods, tests, procedures, assumptions, etc. that Soule utilized to create the database. The focus, however, should be on the information that is included in the database, not on the data that could have been included, but was rejected (for whatever reason). *See Pearl Brewing*, 415 F. Supp. at 1135, 1140 (prohibiting defendant from deposing the computer consultants about alternative computer models, computer programs, input data and calculations that were not utilized by the testifying economics expert); *Long Term Capital Holdings*, 2003 WL 21269586, at *4 (allowing deposition of non-testifying experts who reviewed the available discovery, input

data into financial models, and performed the quantitative analysis that was included in the expert reports, but the limiting the subject matter of the depositions to the non-testifying experts' participation in the preparation and drafting of the expert reports). Here, because of exceptional circumstances, the court is allowing the City to take discovery regarding the information in the database, as well as facts regarding the creation of the database. In other words, the City is getting discovery regarding the evidence plaintiffs intend to use at trial. Allowing such discovery does not undermine the purposes of Rule 26(b)(4)(B). The City is not obtaining "unreasonable access to [plaintiffs'] diligent trial preparation[.]" *Eliasen*, 111 F.R.D. at 401 (citation and internal quotation marks omitted). The access is not only reasonable, it is necessary because the database will be plaintiffs' trial evidence, and the City is entitled to explore whether the information in the database is accurate. Similarly, it is reasonable to allow the City discovery regarding information in Soule's affidavits that are part of the record. Further, given that the City paid a portion of the costs of creating the database, there is no concern that the City is trying to prepare its case at plaintiffs' expense. *Bank Brussels Lambert*, 175 F.R.D. at 45 (one policy consideration underlying Rule 26(b)(4)(B) is that "each side should prepare its own case at its own expense").

Because plaintiffs undeniably will use the database at trial and have already used the three affidavits, fairness requires permitting discovery on those issues.[16] In contrast, the court is not aware of any exceptional circumstances entitling the City to discovery regarding calculations, theories and/or analysis that Soule has done for plaintiffs' counsel that may never be part of

---

[16]To be clear, the database is the main reason for the deposition. The court expresses no opinion whether a deposition would be warranted solely because Soule submitted affidavits.

plaintiffs' case. Indeed, on the present record, permitting the City to take discovery regarding such subjects would be contrary to at least one of the policy considerations underlying Rule 26(b)(4)(B): the "interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill[.]" *Bank Brussels Lambert*, 175 F.R.D. at 45 (citation and internal quotation marks omitted). Unless and until plaintiffs decide to use Soule's calculations, theories and/or analysis, that work is not in play as part of plaintiffs' case, so the court finds no basis to allow discovery. In the absence of exceptional circumstances, work prepared by a non-testifying expert is protected from discovery. Fed. R. Civ. P. 26(b)(4)(B); *e.g.*, *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.*, No. 94 C 7568, 1995 WL 399712, at *2 (N.D. Ill. July 7, 1995).

To offer more specific guidance, the court addresses the subject areas identified by the City. Because the focus is whether the information in the database is accurately drawn from the underlying records, there is no need for the City to ask Soule why certain fields were or were not included—the reasons for including or excluding fields sheds no light on whether the information in the database is factually accurate. If the City takes issue with the fields presented in the database, the City may engage its own expert or explore such issues when it deposes plaintiffs' testifying expert. Additionally, to the extent the City intends to question Soule about the three affidavits he submitted in this case, any inquiry must focus on the calculations actually included in the affidavit. Any other calculations he may have done are not part of plaintiffs' case at this point. (Moreover, if the City wishes to explore other possible calculations, it has all of the data in the database, as well as all of the records underlying the database, and thus can perform

16

its own calculations.) As for any assumptions Soule made in putting together the database and his affidavits, that is a fair subject of inquiry. Regarding the ticketing data recently produced by the City,[17] and whether that data has been incorporated into the database, the court finds that any inquiry on this matter is premature. If plaintiffs decide to use the ticketing data as part of their evidence at trial, they will have to disclose their analysis of the ticketing data, and will have to produce any revisions they make to the database. In the event that happens, the court will address whether the City should have yet another opportunity to re-depose Soule. For now, however, plaintiffs and their computer consultant should be allowed to explore the value of the ticketing data and assess whether it supports their case without sharing their theories and analysis with the City, just as the City is free to analyze the ticketing data without sharing its analysis with plaintiffs.[18] *See Bank Brussels Lambert*, 175 F.R.D. at 45 (counsel should be allowed to seek expert advice to aid evaluation of clients' claims and decide how to present those claims without concern that every consultation will be subject to disclosure).

## III. CONCLUSION

The City's motion to compel is granted in part and denied in part, as set forth above. At the second deposition, the City may question Soule regarding his compensation. Additionally, to

---

[17]The ticketing data, which has been the subject of numerous orders in this case, is data relating to persons who were ticketed rather than arrested for non-jailable municipal ordinance violations. *See, e.g.*, docket entries 114, 135, 188, 216-217 and 223.

[18]The City also wants to ask Soule whether there are any limitations on what can be learned from the various calculations Soule performed. The question the City asked at the original deposition, which Soule was instructed not to answer, was "Is it true the averages and means that you've calculated do not enable you to tell anything about the intent of the officers [involved in the arrests]?" (Soule Dep. at 159:24-160:3.) Although relevance is not a proper basis for withholding an answer, it is hard to fathom how Soule's answer to that question could be relevant. In any event, the court finds that questions regarding any limitations on what can be learned from the calculations should be posed to plaintiffs' testifying expert during expert discovery.

17

the extent necessary, the City may continue its questioning of Soule regarding the affidavits, the database, and the creation of the database provided such questions are consistent with this opinion. Plaintiffs shall pay the City's reasonable costs and attorney's fees relating to the second deposition.

ENTERED:

*[signature: Nan R. Nolan]*

NAN R. NOLAN
United States Magistrate Judge

Dated: August 24, 2005