IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD PORTIS, MADRIC LANCE, and EMMETT LYNCH, individually and on behalf of a class, | ) ) ) ) |
| Plaintiffs, | ) No. 02 C 3139 ) |
| v. | ) The Honorable Robert W. Gettleman ) |
| CITY OF CHICAGO, | ) Magistrate Judge Nan R. Nolan ) |
| Defendant. | ) |

PLAINTIFFS' OPPOSITION TO CITY OF CHICAGO'S
MOTION TO CERTIFY INTERLOCUTORY APPEAL PURSUANT
TO 28 U.S.C. §1292(b) AND FOR STAY PENDING REVIEW

In the City of Chicago's ("the city's") request that this Court certify for immediate appeal its September 9, 2008 order granting plaintiffs' renewed motion for summary judgment, the "controlling question of law" it presents as "underpinning the decision and the case" badly misrepresents that question as "[w]hether the Fourth Amendment mandates the release of a person lawfully arrested (without a warrant) for a municipal offense carrying a fine-only punishment, within two hours of getting a booking number at the police station." City of Chicago's motion to certify interlocutory appeal pursuant to 28 U.S.C. §1292(b) and for stay pending review ("city br."), at 1. Its purpose is transparent: to convert this Court's order that was based on a searching and exhaustive fact-intensive inquiry as to the policies and practices of the Chicago Police Department ("CPD") with respect to processing persons arrested for non-jailable ordinance violations, and its conclusion that was based on the results of that inquiry that detentions of two hours or more after the arrestees were eligible for release were presumptively unreasonable, into a *per se* rule never advanced by plaintiffs or intended by this Court. Only then can the city even attempt to advance a question certifiable under §1292(b).

What actually occurred on summary judgment is that, after slogging through the record, this Court made two findings, based on the undisputed *material* facts: first, at the time the Chicago Police Department issued class members a booking ("CB") number, it had completed all of the administrative

steps (completed the arrest report and quasi-criminal complaint, and had satisfactorily identified and charged the arrestee) necessary to determine that they were eligible for release on an I-bond; and second, "there was nothing (or next to nothing) left to do but release them." Memorandum opinion and order on plaintiffs' renewed motion for summary judgment ("9/09/08 SJ order") (dkt. 523), at 15, 18-19. The result was not the establishment of a *per se* rule, as the city insists. *See* city br., at 5, 6, 8. The application of those findings to well-settled Fourth Amendment principles supported only one conclusion: the city violated the Fourth Amendment rights of class members -- persons arrested for non-jailable ordinance violations[1] -- by detaining them in excess of two hours after the city completed all of the administrative steps necessary to determine that they were eligible for release on an I-bond and "there was nothing (or next to nothing) left to do but release them." 9/09/08 SJ order, at 19.

While the city continues to strenuously disagree with this Court's decision, it fails to establish the prerequisites to an *interlocutory* appeal set forth in 28 U.S.C. §1292(b).

Certification under §1292(b) is limited to "exceptional cases." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (internal quotations and citations omitted). Section 1292(b) "is not intended as a vehicle to provide early review of difficult rulings in hard cases" nor is intended to provide "early resolution of disputes" regarding the trial court's application of law to the facts. *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y. 1982) (citations omitted); *see also Asher v. Baxter Intern. Inc.*, 505 F.3d 736, 741 (7th Cir. 2007) (Rule 23(f), "*like §1292(b)*, must be used sparingly...") (emphasis added). Accordingly, the city is entitled to interlocutory appeal only if it establishes that the order appealed from meets *all* of the following criteria: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the

---

[1] The Court defined the certified class as:

> All persons who, from May 1, 2000, through September 3, 2004, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed. The class is further limited to those persons who (1) were not fingerprinted by defendants after being brought into custody; and (2) were eligible for release on personal recognizance bond pursuant to Rule 553(d) of the Illinois Supreme Court.

9/09/08 SJ order, at 1.

litigation." *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 675-76 (7th Cir. 2000). And the question of law to be addressed on appeal must be a "pure" question of law rather than "merely...an issue that might be free from a factual contest." *Id.*, at 677-78.

As plaintiffs show below, regardless of how the issue is framed, the city's motion does not meet the prerequisites of §1292(b) and it should be denied.

## LEGAL CONTEXT

The Fourth Amendment principles relevant to this case are straightforward and well-settled. First, an arrest pursuant to probable cause justifies "a *brief* period of detention to take the administrative steps *incident to arrest*." *Gerstein v. Pugh*, 420 U.S. 103, 113-114 (1975) (emphasis added). Second, detention must be justified, *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1350 (7th Cir. 1985); thus, "[w]hen the `administrative steps' have been completed" and no probable-cause hearing is contemplated (as in the case of the class members), "the police...*must let [the suspect] go*." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 437 (7th Cir. 1986).

## SUMMARY JUDGMENT ORDER

In light of these well-established legal principles, the Court decided three questions on summary judgment. First, the factually-based question of which administrative steps had to be completed before plaintiffs and the members of the class were eligible for release on an I-bond pursuant to Illinois Supreme Court Rule 553(d) and the CPD's general orders. 9/09/08 SJ order, at 5-9. Second, whether the administrative steps the city takes after probable cause has been established and a detainee has been determined eligible for release are "incident to arrest." *Id.*, at 18. And third, whether, based on the circumstances of this case, it was unreasonable for the city to detain members of the class for two or more hours once these detainees had been determined eligible for release to perform two simple steps that take minutes to complete. *Id.*, at 19.

The Court acknowledged, at the outset of its summary judgment order, that the underlying facts regarding when a detainee becomes eligible for release were indispensable to answering these

questions. *Id.*, at 3 (stating that it could not resolve plaintiffs' claims "until it had a firm grasp on when, in the sequence of administrative steps, plaintiffs' eligibility for release had been conclusively established"). Accordingly, the Court undertook an exhaustive inquiry into the massive and complicated factual record that has developed since the 2002 inception of this case and over the course of two motions for summary judgment. During its searching review of the record, the Court weeded out disputed facts not material to its analysis, and determined, in detail, what steps the city takes upon arresting a class member, the precise order in which it takes them, and the point at which an individual becomes eligible for release. The following list summarizes the Court's factual determinations regarding the steps the city takes upon arresting a class member:

(1) class member is arrested, searched, transported to police station;

(2) class member is placed in a holding area;

(3) arresting officer completes arrest report;

(4) arresting officer completes quasi-criminal complaint;

(5) arresting officer enters class member's identifying information into "hot desk" system for initial name/warrant check and results are obtained [may take place at different points, but always takes place before step 6];

(6) desk sergeant reviews arrest report, quasi-criminal complaint, and any other reports and charges class member;

(7) arresting officer takes paperwork to watch commander, who ensures that individual has been satisfactorily identified and makes preliminary probable-cause determination;

(8) class member is taken from holding area to lockup, where lockup keeper reviews class member's paperwork, *issues a computer-generated CB number*, and prepares class member for custody (in preparation for custody, class member is searched, permitted to make phone calls, has belongings inventoried, and fills out medical screening form);

(9) [at this point, individuals whose identity and/or warrant status were deemed inconclusive by the watch commander are fingerprinted; however, *the certified class specifically excludes individuals fingerprinted after they were brought into custody*];

(10) watch commander again reviews paperwork and signs off on final charges;

(11) desk officer prepares I-bond for class member's signature, and once class member signs I-bond, belongings are returned and individual is released.

*Id.*, at 5-8.

The Court concluded based solely on these factual determinations (specifically, steps 1-9) that "class members had been *determined eligible for release on an I-bond no later than by the time they received a CB number*" and referred to the issuance of a CB number as "a meaningful indicator of when class members' eligibility for release was established." *Id.*, at 15, n.11 (emphasis added).

The Court also found, based on the factual record, that only two ministerial and non-discretionary steps remained after the issuance of a CB number: the initializing of the "final charge" box on the arrest report (step 10), and the preparation and signing of the I-bond form (step 11) (*id.*, at 6, 8), which plaintiffs established is completed in a matter of minutes.[2] Indeed, the watch commander's second review of class member's paperwork and initializing the "final charge" box is unnecessary (and redundant) because the class only includes individuals whose initial name/warrant check was conclusive and, therefore, no new information is obtained between the watch commander's first and second review and the charge cannot change. *See id.*, at 9. Thus, as the Court put it, once eligibility for release is determined, "there [is] nothing (or next to nothing) left to do but to release them." *Id.* In addition, consistent with the "rationale articulated by both the Supreme Court and the Seventh Circuit," the Court held, as a "matter of first impression," that those steps cannot be characterized as "incident to arrest," but are more accurately characterized as "incident to release." *Id.*, at 18-19.

Once the Court determined that class members were eligible for release on I-bond at the time the CB number issued, and that there was nothing (or next to nothing) left to be done, it found that detention in excess of two hours to complete the two ministerial, non-discretionary acts incident to release is unreasonable. *Id.*, at 19.

Accordingly, the Court held that the city had violated the Fourteenth Amendment. *Id.*, at 17-19.

---

[2] The other step listed in step 10, preparing a class member for lockup, is unnecessary since, as the Court determined, the class member is already eligible for release on I-bond at that point.

5

ARGUMENT

1. The issue proposed by the city cannot be decided without a thorough <u>review of the record and is, therefore, unsuited for interlocutory review</u>.

The issue as framed by the city, *i.e.*, "[w]hether the Fourth Amendment mandates the release of a person lawfully arrested (without a warrant) for a municipal offense carrying a fine-only punishment, within two hours of getting a booking number at the police station" (city br., at 1, 5), is totally unsuited for interlocutory appeal because it cannot be decided without intense study of the factual record in two fundamental respects. *See Ahrenholz*, 219 F.3d at 677 ("[p]ure" questions of law can be decided "quickly and cleanly without having to study the record").

Since a booking number can be issued at different times by different jurisdictions throughout the country, the first factual inquiry the Court of Appeals would need to undertake is: what is the significance of the issuance of a CB number by the CPD? The two-hour standard is similarly relevant only in the context of the steps taken after a person arrested for a non-jailable ordinance gets a CB number. Thus, the second factual inquiry the Court of Appeals would have to undertake is: what steps does the CPD take after a person arrested for a non-jailable ordinance gets a CB number and how long do they take?

These factual inquiries are necessary precisely because the Court did not intend to, and did not, create a *per se* rule that might be capable of review as a purely legal question, as the city insists. *See* city br., at 6 (arguing that the Court held that "there is a separate constitutional requirement applicable only to the period between the issuance of a booking number and release -- that the length of that portion of detention cannot, as a matter of law, exceed two hours without violating the Fourth Amendments' `reasonableness' standard"). Rather, the Court's holding that the CPD's practice of detaining class members in excess of two hours was unreasonable addressed only the CPD's procedures and only with respect to the certified class. As the Court held, while on this record, "some time less than two hours may be justified following the issuance of the CB number," two hours is excessive. 9/09/08 SJ order, at 19.

6

Since the issue as framed by the city is obviously fact intensive (in addition to inaccurately characterizing this Court's summary judgment order as creating a *per se* rule), it fails to meet §1292(b)'s first two requirements -- that an interlocutory appeal must involve a "pure" issue of law and that the pure legal question must be controlling. Moreover, resolution of an issue that is not controlling will not speed up the litigation. The city's issue is therefore inappropriate for interlocutory appeal. Below, we address why the issue that this Court actually decided also is not appropriate for interlocutory appeal.

2. The issue decided by this Court on summary
   judgment does not meet §1292(b)'s prerequisites.

Properly stated, the only issue presented by this Court's summary judgment order is: whether the city violated the Fourth Amendment rights of class members arrested for non-jailable ordinance violations by detaining them in excess of two hours after the city completed all of the administrative steps necessary to determine that they were eligible for release on an I-bond and "there was nothing (or next to nothing) left to do but release them." This issue is not appropriate for interlocutory appeal as it is not a pure question of law that is "controlling" and "contestable," and its resolution will not "promise to speed up the litigation." *Id.*, at 675-76.

   A. The issue for appeal is not a "pure" question of law and
      would require the Court of Appeals to study the factual record.

As stated above, the order appealed from must involve a "'pure' question of law rather than merely...an issue that might be free from a factual contest." *Ahrenholz*, 219 F.3d at 677-78; *see, e.g., Cima v. Wellpoint Health Networks*, 2008 WL 4449531, *2 (N.D.Ill. Sept. 29, 2008) (noting that certified issue, whether Illinois HIPPAA creates a private right of action, would not require a trial record for decision); *City of Joliet v. Mid-City Nat'l Bank*, 2008 WL 4889038, *2 (N.D.Ill. June 13, 2008) (stating that question of whether U.S. Constitution or doctrine of intergovernmental immunity preempts and/or prohibits exercise of "eminent domain over privately owned property in which the

7

federal government claims an interest" and is subject to certain regulatory acts could be determined "without a trial record").

The issue of whether the city's practice of detaining class members in excess of two hours after they are determined eligible for release on I-bond is unreasonable cannot be decided "quickly and cleanly without having to study the record." *See id.* The best indication of this is this Court's summary judgment order. Acknowledging that it was necessary for its decision, the Court devoted pages upon pages in its summary judgment order to examining the record in order to gain a "firm grasp" of the city's arrest processing procedures including, for the purpose of determining whether, once a detainee was eligible for release on an I-bond, the remaining steps (whether deemed incident to arrest or to release) performed by the city justified detentions in excess of two hours. In other words, the Court required an in-depth understanding of the steps that the city takes after a class member is eligible for release, what they involve, and the time that it takes to complete them. Specifically, the Court found, based on the record, that only two ministerial and non-discretionary steps remained after the issuance of a CB number: the initializing of the final charge box on the arrest report (step 10), and the preparation and signing of the I-bond form (step 11). *See id.*, at 9. The Court also considered the watch commander's second review of class member's paperwork and initializing the final charge box and concluded that it was unnecessary (and redundant) because the class only includes individuals whose initial name/warrant check was conclusive therefore, no new information is obtained between the watch commander's first and second review and the charge cannot change. *See id.*, at 8-9, 13 (crediting plaintiffs account of the city's processing procedures in their LR 56.1 statement). In the end, this Court concluded, based on these facts, that detention of two or more hours to perform these acts was unreasonable. *Id.*, at 19. The Court of Appeals would similarly need to comb through the factual record and gain the same understanding to address the reasonableness of detentions that exceed two hours because this Court's ruling was not a *per se* rule but one that was specific to the facts of this case -- namely, the CPD's procedures for arresting, charging, and processing detainees that fall within the certified class.

The two cases the city cites to demonstrate that courts have occasionally certified Fourth Amendment issues for interlocutory appeal (city br., at 4-5) are distinguishable and misinterpret

8

*Ahrenholz*. In *Calvin v. Sheriff of Will County*, 2006 WL 1005141 (N.D.Ill. Apr. 14, 2006), nothing in the court's order suggests that the Court of Appeals would have to hunt through the factual record as it would be required to do in this case. *Id.*, at *3. Moreover, to the extent *Calvin* suggested that interlocutory appeal was appropriate because the court would not be required to review the factual record except for "limited uncontested facts," it does not comply with *Ahrenholz*. *Ahrenholz* is explicit that an issue is not a "pure" question of law merely because it "might be free from a factual contest." 219 F.3d at 677-78; *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (citing *Ahrenholz* for the rule that "pure" questions of law do not require the application of settled law to fact).

In *Estate of Escobedo v. City of Fort Wayne*, 2008 WL 4411485 (N.D.Ind. Sept. 25, 2008), the court did not strictly adhere to *Ahrenholz* when, in concluding that the case involved a "pure" or "abstract" legal question, it stated that "this appeal is *close enough* to being an `abstract legal question.'" *Id.*, at *2 (emphasis added). Moreover, the *Estate of Escobedo* court noted that the appeal would not require "hunting through the record," and the court emphasized the efficiency of certifying appeal at that juncture "because a number of claims in [the] case already [were] on appeal." *Id.*, at *2-3. The same cannot be said of the issue in this case.

> B. Because the two-hour standard is not a *per se* rule, there is no controlling purely legal issue.

Because the issue for appeal is not a "pure" question of law, it also necessarily is not a "controlling *question of law*" within the meaning of §1292(b). 28 U.S.C. §1292(b) (stating that order appealed from must involve "a controlling question of law"); *Ahrenholz*, 219 F.2d at 675. This point is, again, underscored by the fact that the Court's ruling on summary judgment required the Court to apply the particular facts of this case to the law, as described above. That this case does not present a question of law for appeal within the meaning of §1292(b) -- a "pure" question of law, *Ahrenholz*, 219 F.3d at 676-77 -- distinguishes it from cases where courts have examined whether a question is "controlling." In those cases, of course, any discussion of whether a question was "controlling" was preceded by an explicit determination that the case presented the requisite question of law. *See*

9

*Sokaogon Gaming Enterp. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658 (7th Cir. 1996); *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

The city's solution to avoid the inevitable conclusion that this case does not present a "controlling question of law" was, of course, to ignore that the issue this case presents requires the application of fact to law, and to frame the issue so it sounds as if the Court created a decisive *per se* rule; only by this maneuvering can the city argue that the Court decided a "controlling" legal issue, the appeal of which is "quite likely to affect the further course of litigation." *See Sokaogon Gaming Enterp. Corp.*, 86 F.3d at 659. Because the Court's ruling did not involve a "pure" question of law and hinged on factual determinations, however, this Court cannot (and need not) predict whether an appeal is "*quite likely* to affect the further course of the litigation." *See id.* (emphasis added).

C.  <u>The issue is not contestable.</u>

A question of law is "contestable" if: (1) there are "substantial conflicting decisions regarding the claimed controlling issue of law"; or (2) "the question is not settled by controlling authority and there is a `substantial likelihood' that the district court ruling will be reversed on appeal." *Amoroso v. Crescent Private Capital, L.P.*, 2003 WL 22839807, *2 (N.D.Ill. Nov. 26, 2003) (quoting *Smith v. City of Chicago*, 2003 WL 1989612, *1 (N.D.Ill. Apr. 28, 2003)). *See also In re Brand Name Prescription Drugs Antitrust Litigation*, 878 F.Supp. 1078, 1081 (N.D.Ill. 1995). Since the issue this case presents -- whether the city violated the Fourth Amendment rights of class members arrested for non-jailable ordinance violations by detaining them in excess of two hours after the city completed all of the administrative steps necessary to determine that they were eligible for release on an I-bond and "there was nothing (or next to nothing) left to do but release them" -- meets neither test, it is not "contestable." *Ahrenholz*, 219 F.3d at 675-76.

The city seeks to avoid this conclusion by advancing two bald assertions: first, that as its "central legal proposition," this Court established "for the first time, the Constitutional limit of two hours `to the time [law enforcement] officials may take to complete the administrative steps incident to release' for such persons [who are not intended to be taken to a probable-cause hearing] after issuance

10

of a CB number." City br., at 8. And second, because this "Court has...acknowledge[ed] that the legal issue here as one of "first impression," this central legal issue is by definition "contestable." *Id.*, at 6.

There are two obvious problems with the city's position. First, as we have pointed out above, this Court's holding is not based on a *per se* rule that the Constitution imposes a two-hour limit on the time law enforcement officials may take to complete the administrative steps incident to releasing persons eligible for release on an I-bond after issuance of a CB number. Instead, the Court's order is premised on its finding based on the factual record that detaining class members for two hours or more after they were determined to be eligible for release and there was nothing (or virtually nothing) more to be done was unreasonable. Because the Court did not establish a *per se* rule, the city's citation to *Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988), for the proposition that *per se* rules regarding the length of detention are not appropriate, is not relevant.

Second, the "matter of first impression" pertains to the nomenclature for the administrative steps the city takes after a detainee has been determined eligible for release. Consistent with the "rationale articulated by both the Supreme Court and the Seventh Circuit," the Court held, as a matter of first impression, that those steps cannot be characterized as "incident to arrest," but are more accurately characterized as "incident to release." 9/09/08 SJ order, at 18-19. Since the record established that "once the watch commander had determined probable cause and established that the class members were eligible for release, there was nothing (or next to nothing) left to do but to release them," *id.*, the Court's decision to characterize the administrative steps taken after a detainee has been determined eligible for release as "incident to release" was logical and not contestable, and this nomenclature was not, in any case, determinative of the Court's decision as to the reasonableness of a two-hour period of detention to complete the two ministerial, non-discretionary steps.

Properly framed, the Court's overall holding is also not "contestable," as it is the only supportable result based on the facts and the law and there are no plausible arguments or persuasive authority to the contrary.[3] The Court's holding is consistent with Supreme Court and Seventh Circuit

---

[3] The city's statement that if the Court is presented with novel issue, the Court "need not find that it will or even ought to be reversed" (city br., at 7) is incorrect under *In re Brand Name Prescription Drugs*

(continued...)

11

jurisprudence and reflects common sense: if an arrest justifies a "brief period of detention to take the administrative steps incident to arrest," *Gerstein*, 420 U.S. at 113-14, and "[w]hen the administrative steps have been completed" and no probable-cause hearing is contemplated, "the police...must let [the suspect] go, *Gramenos*, 797 F.2d at 427, and if at the time it is determined that the arrestee eligible to be let go on an I-bond there is nothing or next to nothing (*i.e.*, the initializing of the "final charge" box on the arrest report and the preparation and signing of the I-bond form, which takes only a matter of minutes) to do but let them go, then two hours of detention in order to complete these ministerial steps is excessive. 9/09/08 SJ order, at 19.

To the extent the courts have addressed what length of detention incident to arrest may be justified under the Fourth Amendment in contexts not involving the CPD's process with respect to individuals arrested on non-jailable ordinance violations, the Court's holding comports with those decisions. In *Gramenos*, the court cautioned that "if police choose to perform time consuming tasks after an arrest, perhaps they must do so on their own time rather than the suspect's." 797 F.2d at 437. And, the *Gramenos* court was clear that once "administrative steps" are complete and no probable-cause hearing is contemplated (as in the case of the class members), "the police...*must let [the suspect] go*." *Id.* Moreover, the Seventh Circuit has speculated that it takes only "one-half hour at most for [a] minor misdemeanor charge to be processed," *Moore*, 754 F.2d at 1351 n.22, and noted that "the American Law Institute thinks that two hours are enough to complete the administrative steps incident to arrest," *Gramenos*, 797 F.2d at 437.

The city's continued reliance on *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), which established a presumptively reasonable 48-hour time period between an arrest and a probable-cause hearing, gets the city nowhere. *Id.*, at 56. The Court has rejected the city's reliance on *County of Riverside*, 9/09/08 SJ order at 17, and for good reason. The Seventh Circuit has clarified that

---

(...continued)
*Antitrust Litigation*, 878 F.Supp. at 1081; *Amoroso*, 2003 WL 22839807, *2; and *Smith*, 2003 WL 1989612, *1, among others. Moreover, in the cases the city cites, the court stated it was "loath" to admit that it may be reversed on appeal, but both cases also state that an issue is contestable if it is "not settled by controlling authority...*and* a substantial likelihood exists that the district court's ruling will be reversed on appeal." See *City of Joliet*, 2008 WL 4889038, at *2 (internal quotations and citation omitted) (emphasis added); *In re Ocwen Fed. Bank FSB*, 2006 WL 1371458, *3 (N.D.Ill. May 16, 2006).

12

*County of Riverside* does not control cases, such as this, where no probable-cause hearing is contemplated. *Chortek v. City of Milwaukee*, 356 F.3d at 740, 746 (7th Cir. 2004). The other authorities the city cites, city br. at 7-8, have no relevance to this Court's decision and should similarly be disregarded. *See United States v. Arvizu*, 534 U.S. 266, 277-78 (2002) (holding that border patrol agent had reasonable suspicion to stop plaintiff while he was traveling in his vehicle based on the "totality of the circumstances"); *United States v. Banks*, 540 U.S. 31, 42 (2003) (holding that officers executing a warrant did not violate the Fourth Amendment or 18 U.S.C. §3109 by waiting 15-20 seconds after they knocked and announced before forcible entry based on the "totality of the circumstances").

  D. <u>An interlocutory appeal would not promise to speed up the litigation.</u>

A review of the Court's summary judgment order on interlocutory appeal would not "promise to *speed up* the litigation." *Ahrenholz*, 219 F.3d at 675. After all, even if the Seventh Circuit reached the insupportable conclusion that the city's practice of detaining class members in excess of two hours after the city completed all of the administrative steps necessary to determine that they were eligible for release on an I-bond and "there was nothing (or next to nothing) left to do but release them," such a decision would leave open the question of at what point in time, in excess of two hours, detention becomes unreasonable, and a remand to decide that question would be necessary.

Moreover, the Court should avoid granting an interlocutory appeal at this late juncture, when all that is left to be determined is damages. The cases cited by the city,[4] city br. at 9, fail to acknowledge that to certify an interlocutory appeal on the rationale that potentially avoiding a damages phase would "speed up" the litigation significantly undermines the rule that interlocutory appeals are reserved for "exceptional cases." *See Am. Airlines v. United States*, 71 Fed. Cl. 744, 747 (2006) (stating that "if every case, in which liability has been determined and damages have yet to be quantified, was

---

[4] The cases the city cites in addition to *Calvin*, which this brief distinguished *supra* in Section 2.A., are distinguishable on other grounds. *See Stong v. Bucyrus-Erie Co.*, 476 F.Supp. 224, 225 (N.D.Wis. 1979) (plaintiffs admitted that order decided a controlling question of law, and a split of authority existed on the relevant question of law); *Hodgkins v. Goldsmith*, 2000 WL 892964, *27 (S.D.Ind. July 3, 2000) (noting that there was a substantial ground for difference of opinion on controlling question of law certified for appeal and noting special interest in quick resolution of constitutionality of curfew law).

considered to meet the standard of `materially advanc[ing] the ultimate determination of this litigation,' the policy limiting interlocutory appeal to `exceptional cases' would be severely eroded" (quoting *Caterpillar*, 519 U.S. at 74)). For this reason alone, the Court should conclude that the city cannot meet the final §1292(b) factor.

## CONCLUSION

For these reasons, plaintiffs respectfully request that the Court deny the city's request for a certification for interlocutory appeal and stay pending review.

Respectfully submitted,

/s/ Judson H. Miner
Judson H. Miner
One of the Attorneys for Plaintiffs

Miner, Barnhill & Galland
14 W. Erie St.
Chicago, IL 60610
(312) 751-1170

Mark G. Weinberg
3612 N. Tripp Ave.
Chicago, IL 60641
(773) 283-3913

Michael Kanovitz
Loevy & Loevy
312 N. May St.
Chicago, IL 60607
(312) 243-5902

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, IL 60643
(773) 233-7900

Robert H. Farley, Jr., Ltd.
1155 S. Washington St.
Naperville, IL 60540
(630) 369-0103

CERTIFICATE OF SERVICE

      Lisa Mecca Davis certifies that she caused the attached Opposition to be served on all counsel of record, by this Court's electronic-filing system, this 17th day of December, 2008.

                                                  /s/ Lisa Mecca Davis
                                                  Lisa Mecca Davis